the branch which does the bulk of the work and bears the brunt in the administration of justice. However that may be of the system, it has grown apparent that it may easily be turned to that effect. It seems to me that it has always been recognized as wholesome in this state the same as in England that trial judges should feel free to exercise full control over the trial of causes and to speak plainly, especially in the presence of trickery or fraud. It is that which has kept the jury system so high in England. Honest litigants and honorable and learned counsel expect it and want it and are entitled to the protection of it. Our highest court has carefully guarded this function of the trial judge and refrained from infringing upon it though often invited to do so.

The motion is denied.

---

## PHALEN v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

1. ACTION FOR CAUSING DEATH—PECUNIARY LOSS—EXCESSIVE VERDICT—RULE OF DAMAGES.

Under Code Civ. Proc. § 1904, providing that the damages awarded may be such a sum as the jury believes will fairly compensate the person for whose benefit the action is brought for pecuniary injuries resulting from decedent's death, a verdict of $800 for the negligent killing of a woman about 70 years of age, who was supported by her children, but who was in fair health, and rendered assistance to her daughter, with whom she lived, is not so excessive as to justify interference with it.

2. SAME.

The rule of damages in actions for causing death has not been changed by reason of the fact that the $5,000 limitation has been abolished by the constitution.

Follett and Green, JJ., dissenting.

Appeal from trial term, Monroe county.

Action by Mary Phalen, as administratrix, against the Rochester Railway Company. Defendant appeals from a judgment of the supreme court entered in the clerk's office of Monroe county on the 30th of December, 1897, in favor of the plaintiff for the sum of $946.63, damages and costs, upon the verdict of a jury of $800 in an action for the negligent killing of the deceased by reason of injuries received upon one of the defendant's street cars on the 13th of April, 1897. The deceased died the 22d day of June, 1897. Defendant also appeals from an order denying a motion for a new trial upon the minutes of the trial judge. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles J. Bissell, for appellant.
C. D. Kiehel, for respondent.

WARD, J. It is conceded upon this appeal that the death of the plaintiff's intestate was caused by the negligence of the defendant in operating a car upon which the deceased was riding, and the sole question presented by the learned counsel for the appellant upon this

review is whether the damages of $800 awarded by the jury were excessive under the circumstances of this case, the claim being that under the evidence it appears that the deceased was an old lady of about 70 years of age; that she was afflicted with heart disease so far advanced that her death might occur at any moment; that she was supported by her children and next of kin; and that she did not, and could not, from the condition of her health and her advanced years, have, under any circumstances, been of any pecuniary assistance or value to the next of kin; and the plaintiff should not recover in this action any damages except for the funeral expenses of the deceased, amounting to about $70.   Upon this review we must regard the facts and the inferences from the facts as presented upon the trial as favorably to the plaintiff, as the jury had the right to consider them in arriving at its verdict.   Those facts were substantially as follows:   The deceased was a lady of about 68 years of age at the time of her death.   She was living at the time in Rochester with the plaintiff, Mary Phalen, her daughter, a married lady with a family, where she had lived about two years.   She had had two husbands. The first was the father of six children,—three sons and three daughters.   Two of the sons and two of the daughters resided in the state of California, one son in the state of Idaho.   The mother (the deceased), before she went to live with the plaintiff, had resided with some of her children in California.   During the time that the mother lived with the plaintiff, one of the California sons had sent her money to some extent for her support.   The mother was in fair health, and rendered assistance to her daughter in her household affairs.   There was some evidence tending to show that she had fatty degeneration and dilitation of the heart, accompanied with asthma, which produced at times short breathing, but it was not very pronounced, and did not interfere with the usual discharge of her duties and work to any great extent.   Her heart withstood the terrible shock of the accident and the suffering which followed, which was a pretty good indication that the heart disease was not so far advanced but what she might have lived many years, and been of service to her children, but for the injury which terminated in her death.   The deceased had separated from her second husband (Mr. Dunn) several years before her death, during which time he had rendered her no support, and she had rendered him no service.   Upon these facts we are to determine whether it is our duty to interfere with this verdict for the reason that it was excessive.

Aside from the numerous decisions of the courts of this state. upon the subject, we have the statutory guide as to the damages in such cases.   Section 1904 of the Code of Civil Procedure provides that "the damages awarded to the plaintiff may be such a sum as the jury * * * deems to be a fair and just compensation for the pecuniary injuries resulting from the decedent's death, to the person or persons for whose benefit the action is brought."   It is not for the wrongdoer to measure the damages resulting from the death which its negligence has caused by the cost of burying the dead, nor will the appellate court assume the duty which the statute has imposed upon the jury to ascertain those damages..   This court will only interfere

when the damages are so excessive as to shock its sense of justice, or indicate prejudice or passion on the part of the jury. Between the bare allowance for funeral expenses and the excessive verdict which shall challenge the interference of this court, there is a wide domain in which the jury is supreme. It is often difficult from the evidence for the court to see upon just what basis the jury has reached its conclusion as to the amount of damages, but that was the problem with which the jury had to wrestle. It is sometimes said that the jury must not indulge in speculation, nor found its verdict upon improbable contingencies. This is true, in a sense; yet the element of contingency, near or remote, does and must enter into every calculation which involves human life and human action. This calculation is for the jury. Then, too, the jury, while considering only the pecuniary aspects of the case, must to a certain extent determine what is pecuniary under the circumstances of each case. In Tilley v. Railroad Co., 29 N. Y. 286, 287, the court of appeals said:

"'A liberal scope is designedly left for the action of the jury. They are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death. They are not tied down to any precise rule. Within the limit of the statute as to amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and sense of justice. They must be satisfied that pecuniary injury resulted. If so satisfied, they are at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family or the intrinsic probabilities of the case that they were sustained by loss of bodily care, or intellectual culture, or moral training which the mother had before supplied, they are at liberty to allow it. The statute has set no bounds to the sources of these pecuniary injuries. If the rule is a dangerous one, and liable to abuse, the legislature, and not the court, must apply the corrective."

And in the same line are Quin v. Moore, 15 N. Y. 435, 436; Tilley v. Railroad Co., 24 N. Y. 475; Lockwood v. Railroad Co., 98 N. Y. 523. In the last case cited the intestate, at the time of his death, was about 68 years old, and left seven children, all adults, and all but two of them living away from home. Those living away from home received no support from the father, but were supporting themselves, and had been for years. It was held that this state of facts did not preclude a recovery by the next of kin. The trial court had refused to charge that where the children are of full age, and living away from the home of the deceased, and are supporting themselves, that no such pecuniary loss has been sustained by them as could be recovered for in that action. This refusal was sustained by the court of appeals, and Earl, J., at page 526, says:

"The courts have found it impossible to lay down any definite guide for the jury in estimating damages under the act in question, and we will not attempt it now. * * * Whatever the rule may be in other states, there are many cases in this which in principle sustain the ruling of the trial judge in receiving the evidence objected to and in refusing to charge as requested,"—citing many cases.

And as bearing upon this question see Lyons v. Railroad Co., 89 Hun, 374, 35 N. Y. Supp. 372, affirmed 152 N. Y. 654, 47 N. E. 1109; Dickens v. Railroad Co., 1 Abb. Dec. 504,—which holds that the next of kin are not limited to nominal damages, although there is no posi-

tive evidence of pecuniary loss. In the case at bar, the mother, having reared her children, and seen them settled in life, was spending her declining years living around among them; some of her children affording her pecuniary assistance to make her life comfortable. The fact that they had dutifully done so does not detract from their right to recover damages in this action. It might well be that when sickness or misfortune should render the care or assistance of this mother necessary she would be in a condition to render it, and this would certainly be a pecuniary benefit. But we will not indulge in anticipations of the many ways in which the jury might see how the deceased could render pecuniary aid to her sons and daughters. They had the right to that aid, and to the preservation of her life, as long as Providence should permit.

We are referred to no case where the court has interfered to set aside a verdict as excessive in this amount in an action of this kind. Reference may be had to cases where damages on slight proof of pecuniary damage have been awarded to a much greater extent in this class of actions, and sustained on appeal. But it is suggested by the learned counsel for the appellant that a different rule should prevail since the $5,000 limitation was abolished by the constitution, and that most of the decisions to which we have referred were under the $5,000 limitation; that that limitation constituted a sort of statutory license to the juries to render their verdicts in any sums up to the $5,000. This, we apprehend, is the scope of his argument, and we cannot assent to it. The court, before and after the constitutional change, have supervised verdicts, and set them aside or modified them, in cases of this character, without reference to the constitutional change or the former limitation. We held this in effect in Howell v. This Defendant, 24 App. Div. 518, 49 N. Y. Supp. 17.

We have reached the conclusion that the verdict was not so far excessive as to justify us in interfering with it, and that the judgment and order appealed from should be affirmed. All concur, except FOLLETT and GREEN, JJ., dissenting.

FOLLETT, J. (dissenting). The verdict is greatly in excess of any "pecuniary injuries" shown to have resulted from the decedent's death. The uncontradicted evidence is that the decedent was a pecuniary burden upon her children, and under such circumstances we are unable to see how her death caused pecuniary injuries to them beyond the expenses of her sickness and burial. Logically, we can see no difference between this case and one in which the next of kin should have supported their mother in a charitable institution. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action.

GREEN, J., concurs.