In re FERRIS.

(Supreme Court, Appellate Division, Second Department.   June 19, 1902.)

INSANE PERSONS—INQUISITION—VACATION OF ORDER—APPEAL.
   On appeal from an order vacating and setting aside an order confirm-
   ing an inquisition, and from an order declaring void a prior order granted
   therein, where there was no claim that the alleged incompetent was
   capable of managing her estate, and it was apparent that the only real
   contention among the parties related to a choice between two trust com-
   panies as committee, the orders appealed from will be reversed.

Appeal from special term, Kings county.

In the matter of the estate of Anna W. Ferris, an alleged incom-
petent person. Appeal from an order vacating and setting aside a
final order confirming inquisition, and from an order declaring void
a prior order granted therein. Reversed.

See 76 N. Y. Supp. 159.

Argued before BARTLETT, JENKS, WOODWARD, and
HIRSCHBERG, JJ.

Milton A. Fowler, for appellant.

Paul Fuller (John P. Murray, on the brief), for Anna W. Ferris.

George H. Fletcher, for heirs at law.

George S. Ingraham, for the Long Island Loan & Trust Company.

PER CURIAM. The voluminous record presented on this appeal
discloses the existence of irregularities in the proceedings which might
under ordinary circumstances justify the orders appealed from, and
which would probably require an affirmance by this court, were any
question involved affecting the merits of the controversy. But it
seems clear that the only real contention among the parties relates
to a choice between two trust companies as committee. The re-
spondents made no claim at any stage of the proceedings that the
alleged incompetent was capable of managing herself or her affairs,
and on the oral argument of the appeal the counsel conceded that no
such claim appeared in the record or existed in fact. The practice
of conducting a proceeding before one special term which is, in effect,
a review of the conclusions reached by another special term, is not
to be commended. Under the circumstances, we do not think a case
was presented for interference with the inquisition of the jury, and,
after a careful examination of the record and the briefs, have reached
the conclusion that the orders appealed from should be reversed,
without costs.

(73 App. Div. 494.)

STERNFELS v. METROPOLITAN ST. RY. CO. et al.

(Supreme Court, Appellate Division, First Department.   June 20, 1902.)

1. ACTION FOR DEATH—PARTIES.
   Where a passenger was killed in a collision between a street car and
   a brewery wagon, caused by the concurrent negligence of both, a joint
   action could be maintained against the street railroad company and
   the brewery company, notwithstanding the different degrees of care
   owed deceased by the two defendants.

**2. SAME—DAMAGES—EVIDENCE—ADMISSIBILITY.**

　　In an action for death, plaintiff introduced evidence of deceased's habits in regard to his family life, the attention bestowed by him on his family, and the interest he took in their social entertainment; that he was a "home body,"—spending much time at home; and that he took great interest in the education of his children. The court instructed that the word "pecuniary," as used in the statute prescribing the damages recoverable in an action for death, excluded injuries to the affections and sentiments arising from the death of relations, and also losses arising from the deprivation of society and companionship of relatives, but that infant children might sustain a loss from the death of their parent of a different kind,—such as loss of nurture, and of intellectual, moral, and physical training, and of parental instruction. *Held* that, as limited by the instruction, there was no error in the admission of the testimony.

**3. SAME—DAMAGES—INSTRUCTIONS.**

　　In an action for death, the court instructed that, in measuring the pecuniary loss to deceased's wife and children, the jury could consider the loss of monetary support which deceased would have given, and the amount, if any, which he might have added to his inheritable estate, provided that they found that such increase would have actually occurred from sources other than profits from capital invested, and that the widow and children would have been alive to inherit it, but that the jury must consider deceased's age, his losses and earnings, if any, his expectancy of life, prospective activity, expense of his own living, and all the circumstances surrounding it; that they were not to speculate on the subject, but must base their finding on the reasonable probability of his earnings, based on the evidence. *Held*, that there was no error in refusing to charge that the jury must consider the possibility of deceased's becoming poor, and his children being compelled to support him in his old age.

**4. SAME—DAMAGES—AMOUNT.**

　　In an action for death, it appeared that deceased was 62 years old, in robust health, and had a life expectancy, according to mortuary tables, of 13 years; that he had been a successful business man, having risen from a clerk to a partner in a large department store, and had accumulated considerable property, and expended for his own and family's support about $5,000 a year. *Held*, that a verdict of $25,000 was not excessive.

**5. SAME—ADMISSIBILITY OF EVIDENCE—MORTUARY TABLES.**

　　In an action for death, mortuary tables are admissible as evidence of the life expectancy of deceased.

　　Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Hannah Sternfels, administratrix, against the Metropolitan Street Railway Company and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

See 74 N. Y. Supp. 511.

Argued before PATTERSON, HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant Metropolitan St. Ry. Co.
Grant C. Fox, for appellant Henry Elias Brewing Co.
William N. Cohen, for respondent.

HATCH, J. The plaintiff, as administratrix, brings this action against both defendants, claiming they are joint tort feasors in producing the death of the plaintiff's intestate, and are consequently liable

to respond therefor in damages. The testimony in the case established that the defendant railway company was engaged at the time of the accident resulting in the death of the plaintiff's intestate in operating two cars, attached together, upon Third avenue. The first car had become disabled by reason of the burning out of a fuse, and the car in the rear furnished the motive power for both cars, pushing the disabled car in front. The motorman upon the rear car, by reason of his position,—the first car being a closed car,—could see but little, and, for practical purposes of operation, could not observe what was transpiring in front upon the street. Upon the first car was stationed the motorman of that car, who communicated, by means of the bell, signals for operation to the motorman upon the rear car. The two cars so situated were being run at a high rate of speed, notwithstanding the disability of the first car and the situation of the motorman operating the second car. When these cars arrived at the block between Eighteenth and Nineteenth streets, a brewery truck, loaded with beer barrels, started to turn in upon the track in about the middle of the block in front of the car. As it had gotten partially over the track, the cars, still being operated at a high rate of speed, came in violent contact with the truck at about its center, and threw it over against the elevated pillar standing in the street. The force of the collision scattered the beer barrels, some of which fell upon the ground, and some fell upon the front platform of the first car, and both the truck and the front end of the car were badly smashed. At the time when the collision occurred, plaintiff's intestate was either riding inside in the front part of the car, or was standing upon the front platform. Shortly after the truck turned upon the track, it became evident to the occupants of both cars that a collision with the truck was imminent, and such situation created considerable confusion of movement of the passengers upon the cars, who arose from their seats and changed their positions. The evidence does not clearly disclose whether the deceased went upon the front platform by reason of the evident danger of collision, or whether he was standing there before that time. It is sufficient, however, to sustain the finding that he was either inside the car or upon the front platform; and while some testimony was given tending to show that he was upon the street, attempting to cross, and not upon the car at all, yet it was sufficiently established for the jury to find that he was upon the front platform or in the front part of the car at the time of the collision. After the collision the deceased was found under the front of the car, and was removed therefrom to the side of the street, where he died shortly after. The identification of the deceased as the person who was upon the car is sufficient to support the finding of the jury in that respect.

It is well settled that an action may be maintained against two joint tort feasors whose negligence contributes to produce an injury, even though the same obligations do not rest upon each with respect to the person injured. It is sufficient to support a recovery if the negligence of both be a contributing cause, even though one owes to the person injured a higher degree of care, and even though there be differing degrees of negligence by each. Either or both are alike responsible. Schneider v. Railroad Co. (Super. Ct.) 15 N. Y. Supp. 556; on appeal,

133 N. Y. 583, 30 N. E. 752; Taylor v. Railroad Co., 16 App. Div. 1, 44 N. Y. Supp. 820; Zimmer v. Railroad Co., 36 App. Div. 265, 55 N. Y. Supp. 308; Hill v. Railroad Co., 109 N. Y. 239, 16 N. E. 61; Thomp. Neg. §§ 3496, 3505, 3506; Henderson v. Railroad Co., 46 App. Div. 280, 61 N. Y. Supp. 690.

We think the evidence in the present case clearly sufficient to authorize the jury to find that the two cars, prior to and at the time of the collision, were being operated at a high and dangerous rate of speed, in a disabled condition, which prevented the application of power for the prompt checking of the same as the contingencies of traffic upon the street required. It scarcely needs argument to show that the operation of cars under such circumstances imposes upon the railway company the obligation of a high degree of care and caution, and manifestly the running at a high rate of speed under such circumstances is inherently dangerous. The evidence was abundant from which the jury were authorized to find that the operation of these cars in the manner and method disclosed by the proof was negligent, and that to such negligent operation was due, in part, the collision.

So far as the brewing company is concerned, it is equally clear that the jury were authorized to find from the evidence that driving upon the track, under the circumstances, was a negligent act. It seems to have been done with little regard for surrounding conditions, and there was an absence of sufficient observation to apprise the driver of the dangers he encountered in driving upon the track. The collision was not at a street crossing, but in the middle of the block; and, while there existed the right of the brewing company to drive across or upon the streets and track at that point, yet, when it so made use of that part of the street, it was bound to exercise care in making observation of the surrounding conditions. While the defendant railway company did not succeed in establishing to the satisfaction of the jury that it was free from negligence, it did succeed, in an eminent degree, in giving evidence tending to show that the brewing company was guilty of negligence; and the plaintiff became entitled to avail herself of this proof in support of the charge of negligence, as well as of the proof given in her affirmative case. The two, coupled together, were abundant to charge negligence upon the brewing company, as well as upon the railway company. The fact that the brewing company did not owe to the deceased the same degree of care which the railway company did, does not exempt it from liability, where its negligence in fact contributed to produce the injury. So far, therefore, as this judgments rests upon the negligence of these defendants, it finds abundant support in the testimony. We do not understand it to be claimed that the deceased is charged with any negligence which contributed to the injury which he received. If there were such question in the case, it was properly disposed of by the jury. We find no difficulty, therefore, in supporting this judgment upon the main features on which it rests.

It is claimed by the railway company that errors were committed in the reception of evidence which call for a reversal of this judgment. These errors, it is claimed, were committed by the plaintiff in offering and the court in permitting evidence to be given of the habits of

the deceased in reference to his family life; the attention which he bestowed upon the members of it; the interest he took in their social entertainment; that "he was a home body,"—spent much of his time with his family, took great interest in the education of his children, and especially in the education and culture of his daughter. These facts were all elicited by various questions propounded by the plaintiff to a witness, were objected to by the defendants, received by the court and exception thereto was duly taken. The learned counsel for the railway company insists that the subject-matter of this evidence constitutes error, for the reason that it presented for the consideration of the jury an erroneous measure of damage; that the jury were not entitled to measure the damage sustained by the plaintiff and the next of kin, based upon personal association with the deceased; that such matters are not embraced within the statute, which awards a recovery only for pecuniary loss sustained. It is to be observed, however, that the plaintiff was entitled to prove the character, habits, health, business ability, or any other matter tending to lay before the jury the character of the man, his ability, and earning power. It is perfectly evident that a defendant would be authorized to show, when it is sought to charge it in damages for negligent injury causing death, that the deceased was vile in habits, uniformly sought bad associations, contributed nothing to the support of his family or the culture of his children, and did not perform the duties of a husband and father properly, either by pecuniary assistance or by moral association and help; that he was without property, earning power, or ability, and discharged none of the duties which by common consent devolved upon him as a reputable member of society. All of these facts would bear pertinently and directly upon the value of the life, and the consequent pecuniary injury entailed on account of the death. When the provision of section 18, art. 1, of the constitution of 1894, which now finds place in that instrument, was the subject of debate in the constitutional convention, some of the reasons assigned for the removal of the limitation of damages where death intervened as a consequence of injury were that it would permit of testimony to be given respecting the life, character, habits, earning power, and accumulation of the deceased. Inasmuch as the value of a human life is necessarily dependent upon all of those considerations, and as its pecuniary value is necessarily derived therefrom, testimony bearing thereon is competent. Medinger v. Railroad Co., 6 App. Div. 42, 39 N. Y. Supp. 613, and debates of the constitutional convention referred to therein. It is evident, therefore, that proof which tends to show the character and habits of the life which has been destroyed bears direct relation to the pecuniary loss sustained by the widow and the next of kin. The proper observance of family relations and the fidelity of their discharge by the deceased is an element in determining the value of the life and the loss to the next of kin, as are the extent of his possessions and his ability to earn. The character of the proof differs only in degree of application. In Tilley v. Railroad Co., 24 N. Y. 471, it was said: ·

"But infant children sustain a loss from the death of their parents, and especially their mother. * * * She owes them the duty of nurture, and of intellectual, moral, and physical training, and of such instruction as can

only proceed from a mother. This is, to say the least, as essential to their future well-being, in a worldly point of view, and to their success in life, as the instruction in letters and other branches of elementary education which they receive at the hands of other teachers who are employed for pecuniary compensation.  Suppose a person under obligation to furnish a minor apprentice with common-school instruction for a given period; would not the violation of that duty furnish a claim for damages?  The injury would be of the same character which a child suffers from the loss of the training and instruction which it is entitled to receive from its parents.  The injury in these cases is not pecuniary, in a very strict sense of the word, but it belongs to that class of wrongs, as distinguished from injuries to the feelings and sentiments; and in my view, therefore, it falls within the term as used in the statute."

The court in that case held that affections and sentiments, or deprivation of society and companionship, did not fall within the definition of the statute, and could not be received.  When this case was again before the court (29 N. Y. 252, 86 Am. Dec. 297), it was said:

"The charge of the judge was explicit that the damages must be limited to pecuniary injuries; and he said that, in estimating them, they had a right to consider the loss (that is, the pecuniary loss) which the children had sustained in reference to their mother's nurture and instruction, and moral, physical, and intellectual training.  I think this does not imply that the children are necessarily and inevitably subjected to such a loss, but leaves it to the jury to determine whether any such loss has been in fact sustained, and, if so, the amount of such loss.  This is the fair scope and meaning of the charge, and, if it was not sufficiently explicit, should have been made so by a direct request for such purpose.  Thus understood, I regard it as unexceptional.  It is certainly possible, and not only so, but highly probable, that a mother's nurture, instruction, and training, if judiciously administered, will operate favorably upon the worldly prospects and pecuniary interests of the child.  The object of such training and education is not simply to prepare them for another world, but to act well their part in this, and to promote their temporal welfare.  If they acquire health, knowledge, a sound bodily constitution, and ample intellectual development, under the judicious training and discipline of a competent and careful mother, it is very likely to tell favorably upon their pecuniary interests."

The observation made by these courts with respect to the pecuniary value of a mother to the children, in their nurture, care, and training, applies with equal force to the other parent, when such duties and obligations are discharged by him; and the pecuniary loss sustained by the children when deprived of his parental care is the same, in a pecuniary sense, as though discharged by the mother.  See, also, Lockwood v. Railroad Co., 98 N. Y. 523; Phalen v. Railway Co., 31 App. Div. 449, 52 N. Y. Supp. 836.  It is clear, therefore, that so far as this testimony bore upon the care and attention which the deceased devoted to his children in their care, culture, and education, it was competent testimony to establish pecuniary loss, within the doctrine of these cases.  The testimony that he was a "home body" (discharged the duties of a husband, and entertained his family in a social way, and was domestic) may not have furnished the strongest basis for establishing pecuniary loss, yet we think it was competent, as showing his character, and, when connected with his business ability, may be said to have had a bearing upon his value and good standing in the community, which is a distinct element of pecuniary advantage. Quinn v. Power, 29 Hun, 183.  In this view of the testimony, we are

to examine the charge of the court upon this subject and see if the proper limitations were placed thereon. Upon this subject the court charged:

"The word 'pecuniary' was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship of relatives, which are equally incapable of being defined by any recognized measure of value. But infant children may sustain a loss from the death of their parent * * * of a different kind. He owes them the duty of nurture, and of intellectual, moral, and physical training, and of such instruction as can only proceed from a parent."

This exactly stated the rule of law applicable to the case and the testimony. It was a clear and explicit charge, excluding elements of affection and deprivation of society and companionship from entering into the consideration of the jury. So limited, no error was committed in the reception of this testimony. It was clearly competent, within the limitation placed upon it by the court, and reversible error cannot be predicated thereon. Carpenter v. Railroad Co., 38 Hun, 116.

Counsel for the defendant further insists that the court erred in its charge to the jury. The court charged that in measuring pecuniary loss the jury were entitled to consider the practical loss of monetary support, aid, and assistance which the deceased would have given or expended if he had lived to the end of his natural life, and the amount, if any, which, had he continued to live, might have increased his estate, and added to the amount to be inherited from him upon his death in the course of nature, provided that the jury found with reasonable certainty from the evidence that such increase would actually have occurred from sources other than profits from capital invested in any business, and that the widow and children would have been alive to inherit it at death. Subsequently the defendant railway company requested the court to charge that:

"In determining the amount of damages, the jury must take into consideration the fact that, under the law, in case the deceased had become poor and unable to support himself, his child could have been compelled to support him in his old age."

The court refused so to charge, and the defendant excepted. It is insisted by the learned counsel for the defendant railway that as the court had charged that the jury might consider that the deceased might have increased his estate, and thus increased the amount to be inherited from him at his death, the defendant became entitled to the charge which it requested upon that subject. The reason which supports this claim is more than plausible, because one element was to be considered equally with the other in measuring the pecuniary loss, and the defendant was fairly entitled to an instruction upon such subject. The answer to the defendant's contention of error, however, is plain and conclusive, viz., the court, in substance, so charged; for in connection with this subject the court stated that they could only consider such fact by taking into consideration his age, the amounts, if any, earned or lost by him, the length of time he was likely to live, his prospective activity during that time, the expense of his own living

and maintenance, and all the facts and circumstances surrounding it; that the jury were not to guess or speculate upon such subject, but must base it upon the reasonable probability of his earnings, based upon the facts in evidence, and determine how much the next of kin would have received therefrom; and, further, the court charged, "provided, of course, that you find with reasonable certainty from the evidence that such increase would actually have occurred from sources other than profit from capital invested in any business," and the widow and children would have been alive to receive it. This fully and completely laid before the jury the law,—that they could award nothing for prospective increase in the amount of the inheritance unless it was founded upon the evidence, and unless they were able, with reasonable certainty, to say that it would have existed. This included the whole subject of liability to lose all that he earned and all that he had, and fairly embraced the subject-matter at which defendant's request was aimed. The court was not bound to charge in the exact language of the request, and, as he fully covered every element upon which the jury were to exercise their judgment, it answered the requirements of the law, and it was therefore not error to refuse to charge as requested.

We agree with the learned counsel for the railway company that no errors were committed in the court's refusal to charge the defendant brewing company's request, as against it. The whole subject of such rights, as between joint tort feasors, is elaborately disposed of in Zimmer v. Railroad Co., 36 App. Div. 265, 55 N. Y. Supp. 308.

Nor do we think the damage excessive. The deceased was in his sixty-second year, was in robust health, had been successful in business,—having risen from a clerk to be a partner in a large department store in Oregon,—had accumulated considerable property, and after removing to New York was engaged in various ventures, and dealt in real estate, and expended for the support of himself and family about $5,000 a year; and it is evident, from both character and health, that he had a considerable number of years of active business life, in which it could be said with reasonable certainty that he would have continued to earn at least the amount which he expended upon his family. His expectation of life was 12.75 years according to the Northampton tables, 13.82 years according to the Carlisle tables, and 13.47 years according to the American Experience table. It is also evident that these tables of life are only approximate, and that a jury may reasonably conclude that the duration of life will be much longer, and earning capacity extended over a greater period. Beecher v. Railroad Co., 53 App. Div. 324, 65 N. Y. Supp. 642. It cannot be said, therefore, that the verdict which has been rendered is excessive. No error was committed in receiving in evidence the life tables. It was the subject of testimony given by an expert insurance actuary of a reliable company, and it was competent evidence to lay before the jury what was the longevity of human life, as based upon actual experience in measuring such periods.

We have discussed substantially all the points raised by the defendants, and each of them, and have examined all such questions if we have not discussed them. We find no reversible error in this record. It follows, therefore, that the judgment should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.