Ross WARRINGTON, as Administrator, etc., of ROBERT WARRING-
TON, Deceased, Appellant, *v.* NEW YORK POWER AND LIGHT
CORPORATION, Respondent.

Third Department, October 27, 1937.

*Leary & Fullerton* [*James A. Leary* and *Walter A. Fullerton* of counsel], for the appellant.

*Borst & Smith* [*Laurence V. Benedict* of counsel], for the respondent.

RHODES, J. The action is brought to recover damages arising out of the death of plaintiff's intestate caused by the alleged negligence of defendant.

The defendant owns a dam and hydro electric station at Beardslee Falls on East Canada creek, the power station being about half a mile from the main State road between Schenectady and Utica and about six miles east of Little Falls. The general direction of the creek is from north to south, and the dam in question is about half a mile north of the power house which is located on the west side of the creek. About 500 feet southerly from the dam referred to during the trial as the new dam, is an abandoned dam known as the Beardslee dam, referred to on the trial as the old dam. Further south than the abandoned dam is a natural pool in the rocky bed of the stream, the pool being of irregular circular shape about 60 feet wide, 100 feet long and about 20 feet in depth. About 1,300 or 1,400 feet south of this pool are natural falls known as the Beardslee Falls, having a drop of approximately 20 feet. About 150 feet south of the falls is the power house. From the new dam to the power house the stream runs through a rocky ravine or gorge with nearly perpendicular sides.

There is a gate known as a Taintor gate in the new dam which, when raised, makes an opening twenty feet wide horizontally and twelve feet perpendicularly. This gate is operated mechanically and is opened for the purpose, among other things, of letting water through the gateway to draw off logs and rubbish from in front of the grating over the intake to the penstock, which runs from the dam to the power house.

A dirt road leads from the main road to the power house and at the entrance to the dirt road where it leaves the main road there was a large sign reading as follows:

" Beardslee Falls Hydro Station<br>
Niagara Hudson<br>
New York Power and Light Corporation<br>
Visitors Welcome."

It appears that the company had put up three signs in the vicinity, one at the new dam and one on each side of the creek at the top of the ravine and some distance therefrom, such signs bearing the words: " No Trespassing."

Throughout the summer of 1935 the pool above referred to had been used by grown men, boys and girls of the vicinity as a swimming pool and at times parties of twelve to fifteen were swimming therein and the proof shows that on one occasion thirty-five were present in a party. Many of the swimmers went from the main road, up the dirt road to the power station and then proceeded north along the east bank of the creek to reach the pool, stepping across its outlet to reach the west side. When the gate was closed the water from the pool ran through a narrow, rocky channel or outlet two or three feet wide, the surface of the water in this outlet being one or two feet below the top of the banks of this channel.

On Sunday, the 18th of August, 1935, about ten-thirty o'clock in the forenoon, the deceased, with other boys, followed the route above described from the main road, and from the power house to the pool where they went in bathing. At eleven o'clock in the forenoon, an employee of defendant opened the gate to its full extent letting a volume of water escape. When thus opened, it discharged 2,000 cubic feet of water per second, a cubic foot weighing 62.5 pounds. The bathers noticed that the water in the pool was coming faster and beginning to circle around the pool. They hurriedly partially dressed, crossed to the east side of the channel and started running down the east side to the brink of the falls. By this time the water had overflowed its narrow channel and had risen waist high; the sound of the rushing water increased to a roar

and on the crest of the current logs were rushing downstream faster than the boys could run. Deceased was caught in midstream, carried over the falls and thus met his death.

Witnesses for the plaintiff who were present with deceased, testified that on no other occasion when they were in the ravine had the gate been opened, and the water had never before overrun the pool.

The court submitted to the jury the question as to whether deceased was a trespasser or a licensee, and instructed the jury as to the duty of defendant both as to a trespasser and to a licensee. He also left it to the jury to determine whether deceased had implied permission to use the pool on the day in question, and as to whether the defendant knew or in the exercise of reasonable care should have known that the pool was being used by the public for purposes of sport and recreation.

The plaintiff complains of two errors of law which are so serious as to require a reversal. After charging that it was for the jury to say as a matter of fact whether defendant was so careless and negligent in the operation of its plant that its culpability was approximately the cause of the accident, the court said: " In arriving at that you might ask yourselves what you would have done. You are the owner of this plant, you are the owner of this stream bed, you are the owner of this dam, and you go up there on the 18th of August, you have given no one permission to be there directly, in that stream bed below, and it is your property, and you have a right to use the property as you will — that is, in the operation of this plant — the defendant here had a lawful and legal right to open that dam and let the water go down through; it was within its rights — you are up there now and you are going to open that gate; you haven't seen anyone down there; you do not actually know anyone is below; you have a right to assume that anyone who is down there will use reasonable care for his own safety; it is your property; you know how the gate works; gradually opens, the pond below fills; you have evidence here as to the timetable running of this water down through; and you are the average careful, prudent man and you own all this property, and you are opening that gate — now, what would you have done?"

By this portion of the charge the court set up an improper standard for the guidance of the jury in measuring the conduct of the defendant. The standard is not what the jurors individually or collectively would have done, but the standard is that of the typical prudent man. (*Williams* v. *Hays*, 143 N. Y. at pp. 453, 454; *Mertz* v. *Connecticut Co.*, 217 id. 475, 477; *Maguire* v. *Barrett*, 223 id. 49, 54;

*The Germanic,* 196 U. S. 589, 596; *Pellegrino* v. *Smith Co.,* 226 N. Y. 165, 167; *Raolaslovic* v. *N. Y. C. R. R. Co.,* 245 id. 91, 101.)

The other error complained of relates to a ruling of the court during the trial. While the plaintiff, the father of deceased, was being cross-examined, he was asked by the court: " Q. Have you any other children? A. Yes, one. Mr. Leary: That is not in the issue, your honor. The next of kin are the father and mother. The Court: Oh, yes, I know that, but have you other children? Witness: Yes, I have one. The Court to witness: Q. A boy or a girl? A. A girl. Q. How old? A. Fifteen now."

The plaintiff did not make further protest, but thereafter the court in his charge adverted to the fact that plaintiff had another child and said relative to the question of damages: " How much worse off are these parents financially because of the death of their sixteen year old son, their only son — they had one other daughter between fourteen and fifteen? "

This was not excepted to, but reference to the fact that plaintiff had other children was not proper as bearing upon the question of damages. *(Murphy* v. *Erie R. R. Co.,* 202 N. Y. 242.)

Counsel for plaintiff points to other rulings asserted to have been prejudicial, claims that the court unduly limited plaintiff's counsel in cross-examination and urges that the court actively and unduly took part in the examination of witnesses to plaintiff's prejudice.

As a new trial is to be had on the grounds hereinbefore discussed, and to avoid extension of this opinion, the other objections will be passed over without further comment.

The judgment and order should be reversed on the law and facts and new trial granted, with costs to the plaintiff to abide the event.

HILL, P. J., MCNAMEE, CRAPSER and HEFFERNAN, JJ., concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.