OPINION OF THE COURT
Karla Moskowitz, J.
In this action, defendants St. Vincent’s Hospital and Medical Center of New York and Daniel Rosa, M.D., move for partial summary judgment pursuant to CPLR 3212 (e) dismissing all claims interposed by plaintiffs (1) in which recovery is sought for pecuniary damages allegedly sustained by individuals other than the decedent’s parents, Allan S. Larson and Nanette Larson, and (2) in which recovery is sought by them for “alleged loss of inheritance”. Defendant Lawrence Zingesser, M.D., cross-moves for the same relief. In a separate cross motion, defendants Cabrini Medical Center and Drs. Whiteside, Grimm and Reimann seek the same relief.
PACTS
This action arises out of the death of Jonathan David Larson, a 35-year-old composer, lyricist, and playwright whose play “Rent” is now appearing on Broadway. It is undisputed that, at the time of his death on January 25, 1996, Larson was not married, had no children and was survived only by his father, plaintiff Allan S. Larson, his mother, Nanette Larson, and his sister, plaintiff Julie Larson McCollum, and her two sons.
As is the case with many 35 year olds, Jonathan Larson died intestate. On February 13, 1996, plaintiffs filed a petition for letters of administration with the Surrogate’s Court, New York County. The petition states that the sole “distributees” of Larson’s estate, as that term is defined in EPTL 4-1.1, were his mother and father. The Surrogate’s Court granted letters of administration to plaintiffs on February 21, 1996. They coim menced this action on March 11, 1996.
*575 On March 20, 1996, Jonathan Larson’s parents filed a document entitled “Notice of Renunciation of Intestate Share” (the Parents’ Renunciation) with the Surrogate’s Court, which provides as follows:
“notice is given that allan s. larson and nanette larson, distributees of Jonathan larson, the above-named decedent, has on the 18 day of March, 1996, duly renounced in writing fifty (50%) percent of their joint intestate share in the Estate of Jonathan larson, the decedent above named * * *
“The name * * * of the distributee whose interest is increased by reason of such renunciation is also julie larson mccollum” (Parents’ Renunciation, exhibit B to defendants’ affirmation in support of motion).
In their demand for a bill of particulars, defendants asked plaintiffs to set forth each and every individual who allegedly has sustained or will sustain pecuniary losses as a result of the death of Jonathan Larson. Plaintiffs identified Larson’s father, mother, his sister, and his sister’s two sons.
In support of their motion, defendants argue that Jonathan Larson’s parents, as his sole distributees, are the only persons entitled to seek or share in a wrongful death recovery. To the extent that this action seeks to recover damages for decedent’s sister and nephews, partial summary judgment dismissing their claims is, the defendants contend, warranted. Defendants also argue that partial summary judgment dismissing all the claims of decedent’s parents (aged 69 and 70 at the time of his death) sounding in “loss of prospective inheritance” is also warranted, as a matter of law, because they could have had no reasonable expectation of outliving their son who, at the time of his death, had a life expectancy of 40.1 years. Defendants also argue that the Parents’ Renunciation does not include potential recovery from this wrongful death action because only the parents’ intestate share of their son’s estate was renounced and a claim for wrongful death is not part of the decedent’s estate, but rather is a separate statutory cause of action granted to those with pecuniary losses arising from the death.
In response, plaintiffs contend that the Parents’ Renunciation of 50% of their “joint intestate share” in Jonathan Larson’s estate has the effect of devolving a 50% interest in his estate and in this wrongful death action to decedent’s sister, Julie Larson McCollum, as the next distributee in line and that, as to the 50% renounced interest, decedent’s parents are deemed to have predeceased him. Plaintiffs also contend that *576 only a jury may decide whether, had Jonathan Larson lived, he would have rendered financial support to his legal distributees and next of kin.
DISCUSSION
Wrongful death causes of action were created by EPTL 5-4.1, which provides, in pertinent part: “1. The personal representative * * * of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent’s death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued.”
EPTL 5-4.4 governs the distribution of damages recovered pursuant to a wrongful death verdict or settlement and provides, in pertinent part:
“(a) The damages, as prescribed by 5-4.3, whether recovered in an action or by settlement without an action, are exclusively for the benefit of the decedent’s distributees and, when collected, shall be distributed to the persons entitled thereto under 4-1.1 * * * The damages shall be distributed subject to the following:
“(1) [s]uch damages shall be distributed by the personal representative to the persons entitled thereto in proportion to the pecuniary injuries suffered by them” (emphasis added).
As the statute clearly states, damages recovered in a wrongful death action are not an award in compensation of the injuries sustained by the decedent but rather are recovered for the exclusive benefit “of the decedent’s distributees” (Meroni v Holy Spirit Assn. for Unification of World Christianity, 119 AD2d 200, 206-207). Wrongful death damages do not pass by intestacy, but rather are an award made directly by a court to the appropriate distributee (EPTL 5-4.4; George v Mt. Sinai Hosp., 47 NY2d 170, 176; Alberino v Long Is. Jewish-Hillside Med. Ctr., 87 AD2d 217, 218). The damages do not become part of the decedent’s estate (Alberino v Long Is. Jewish-Hillside Med. Ctr., supra, at 218; United States v Comparato, 850 F Supp 153, 158, affd 22 F3d 455, cert denied 513 US 986). Damages are defined as the “ ‘fair and just compensation for the pecuniary injuries resulting from the decedent’s death’ ” (Alberino v Long Is. Jewish-Hillside Med. Ctr., supra, 87 AD2d, at 218, citing EPTL 5-4.3).
EPTL 1-2.5 defines a distributee as “a person entitled to take or share in the property of a decedent under the statutes governing descent and distribution.” EPTL 4-1.1 (a) (4) *577 provides that, if a decedent is survived by “[o]ne or both parents, and no spouse and no issue, the whole [of the estate goes] to the surviving parent or parents.” “The law is well established that for purposes of intestate succession the only persons who can be deemed distributees of the deceased are those who qualify as such at the date of the death of decedent” (Matter of Lueke, 78 Misc 2d 904, 906, affd 49 AD2d 698; accord,, Alberino v Long Is. Jewish-Hillside Med. Ctr., supra, 87 AD2d, at 218). Thus, in this case, it is the parents who are the “distributees”, not other relatives, e.g., decedent’s sister, who could have qualified as a distributee if the parents had not been alive at the time of their son’s death.
Although it has been held that EPTL 2-1.11 permits a distributee to renounce not only his or her intestate share of a decedent’s estate but also an interest created by operation of law (Matter of Dominguez, 143 Misc 2d 1010), a renunciation “must be written, signed and acknowledged and must be clear in its intent” (Matter of Gerke, 70 Misc 2d 280, 281). The Parents’ Renunciation includes only the Larsons’ intestate share in their son’s estate, and does not implicate or otherwise mention their wrongful death claim, which is not a part of the decedent’s estate (see, Baer v Broder, 86 AD2d 881; United States v Comparato, supra, 850 F Supp, at 159 [noting that the renunciation spoke only of the renouncing parties’ interest in the estate of the decedent while wrongful death damages are not an asset of the estate]). Thus, the Parents’ Renunciation, executed after Jonathan Larson’s death, has no bearing on this wrongful death action.
To the extent that plaintiffs rely on the Second Department’s decision in Matter of Molloy v Bane (214 AD2d 171) and the Kings County Surrogate’s Court’s decision in Dominguez (143 Misc 2d 1010, supra) to support their contention that statutory distributees who renounce an interest in the decedent’s intestate estate, also renounce their interest in any wrongful death lawsuit, that reliance is misplaced. In Molloy, the Court specifically differentiated between renunciation of testamentary and intestate dispositions as part of decedent’s estate, which never vest in the beneficiary, and renunciation of an intestate share of a wrongful death recovery (214 AD2d, at 174). Further, the issue and focus in Molloy was the effect of a renunciation of distributions on retention of Medicaid benefits, not whether damages in a wrongful death action could be maximized by transferring the interest to one who did not qualify as a distributee at the time of the decedent’s death.
*578 Dominguez (supra), also relied on by plaintiffs, did not involve the issue raised by defendants in their motion and cross motions. At the time of the decedent’s death in Dominguez, his distributees were his spouse and two infant children and there were no assets other than the wrongful death cause of action. After that action was settled, decedent’s spouse filed an “Affidavit of Waiver” wherein she expressly waived any claim she had to the settlement proceeds in favor of her two children. The Department of Social Services objected to the waiver on the ground that it had a claim against the spouse for public assistance benefits. Surrogate Bloom concluded that EPTL “applies to a recovery of wrongful death proceeds” (143 Misc 2d, at 1014 [emphasis added]; accord, Matter ofKeuning, 190 AD2d 1033). The renunciation in Dominguez did not, however, attempt to maximize potential damages in the wrongful death action by transferring distributee status to decedent’s children, who were not distributees at the time of his death. Indeed, later in the decision, the Surrogate determined that the date of death is the date for determining the distributees who are entitled to make a claim for pecuniary loss in a wrongful death action and that a renunciation of “the right to share in the proceeds of a wrongful death action” must be made within nine months of the decedent’s death (Matter of Dominguez, supra, at 1016 [emphasis added]). In Matter of Molloy v Bane (supra), the Appellate Division recognized Surrogate Bloom’s holding that a wrongful death recovery could be renounced, but overruled his holding that a renunciation could defeat a claim for reimbursement of public assistance (214 AD2d, at 176).
“[Djamages [in a wrongful death action] must be measured as of the date of decedent’s death, based, as they are, on the pecuniary loss sustained by the distributee-beneficiary at the time of death, [and thus] they cannot be affected by subsequent events” (Alberino v Long Is. Jewish-Hillside Med. Ctr., supra, 87 AD2d, at 219), such as the remarriage of a spouse (Luddy v State of New York, 30 AD2d 993, affd 25 NY2d 773). The only exception to this rule is the death of a distributee during the pendency of a wrongful death action, because the death removes all doubt of the life expectancy of the beneficiary (Sider v General Elec. Co., 203 App Div 443, 445, affd 238 NY 64; Woodard v Pancio, 65 AD2d 923, 924; cf., Van Beeck v Sabine Towing Co., 300 US 342, 347-348 [New York rule is that administratrix of distributee’s estate may continue action for her losses until time of her death, but not thereafter]). Thus, *579 when a distributee dies during the pendency of the action, damages are calculated on the basis of the actual life span of that deceased distributee, rather than on the life span and needs of the next distributee in line. In Sider v General Elec. Co. (supra), the wife and sole statutory beneficiary died before the trial of her husband’s wrongful death action. The trial court, the Appellate Division and the Court of Appeals all determined that a charge to the jury that it consider the pecuniary loss sustained by the husband’s brothers and sisters was improper (203 App Div, at 445, 238 NY 64, 70, citing Pitkin v New York Cent. & Hudson Riv. R. R. Co., 94 App Div 31, 37 [where sole distributee dies before trial of wrongful death action, additional recovery cannot be had for people who were not the decedent’s next of kin at the moment of his death]).
“If the father is the distributee, it is generally immaterial whether the decedent had brothers and sisters” (Reed v County of Schoharie, 51 AD2d 499, 501, citing Warrington v New York Power & Light Corp., 252 App Div 364). To allow family members to utilize renunciations to maximize wrongful death recoveries would have the effect of changing those benefits and further increasing the speculative nature of pecuniary losses in wrongful death cases.
This court finds, therefore, that EPTL 2-1.11, although permitting decedent’s distributees to renounce their interest in the proceeds of a wrongful death action, cannot be used to create a mechanism whereby another claimant can plead and prove pecuniary losses different from those suffered by the distributees in whom the wrongful death cause of action vested upon the decedent’s death (see, Murphy v Erie R. R. Co., 202 NY 242, 245 [admission of evidence regarding distributee’s children was reversible error]).
Thus, the court concludes that the Parents’ Renunciation, which, on its face, renounces only their interest in their son’s estate, is inapplicable to this wrongful death action and ineffective to the extent it was intended to substitute claims for pecuniary damages on behalf of decedent’s sister and her children for those of his parents. The court also concludes that only Allan S. Larson and Nanette Larson can be deemed distributees on whose behalf a claim for pecuniary damages may be asserted in this action. This does not mean, however, that distributees cannot renounce any part of the proceeds obtained in a wrongful death action in accordance with Surrogate Bloom’s decision in Dominguez (supra, 143 Misc 2d, at 1016).
Defendants further contend that, because decedent’s parents are the only permissible claimants in this action, defendants *580 are entitled to partial summary judgment dismissing all of plaintiffs’ claims sounding in “loss of inheritance”. Defendants ask this court to rule, as a matter of law, that the parents of Jonathan Larson, aged 69 and 70 at the time of his death, had no expectation of outliving their 35-year-old son, whose life expectancy, according to life expectancy tables, was 40.1 years.
The conceptual basis upon which a wrongful death action is grounded is the right of a decedent’s distributees to seek redress for alleged future pecuniary losses directly resulting from the death of the decedent (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 667-668). In measuring pecuniary loss, the jury must consider: “the practical loss of monetary support, aid and assistance which the deceased would have given or expended if he had lived to the end of his natural life, and the amount, if any, which, had he continued to live, might have increased his estate and added to the amount to be inherited from him upon his death in the course of nature, provided that the jury [finds] with reasonable certainty from the evidence * * * that the [distributees] would have been alive to inherit it at death.” (Sternfels v Metropolitan St. Ry. Co., 73 App Div 494, 502, affd 174 NY 512.)
Plaintiffs’ counsel basically conceded at oral argument that the parents of Jonathan Larson had no reasonable expectation of inheriting from their son. Based on the age of decedent’s parents and on his life expectancy at the time of his death at age 35, the court finds, as a matter of law, that there is no reasonable certainty that decedent’s parents would have been alive at the time of his death and plaintiffs’ claim for loss of inheritance is dismissed.
Plaintiffs also claim in their bill of particulars that Jonathan Larson, had he lived, would have contributed money to the support of his parents. The court notes that the failure of plaintiffs’ loss of inheritance claim does not fully dispose of their pecuniary damages claim because, as the First Department made clear in Sternfels (supra), the concept of pecuniary damages has several components, only one of which comprises loss of inheritance (73 App Div, at 502; see also, Parilis v Feinstein, 49 NY2d 984, 985 [damages in a wrongful death claim “are limited to loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death”]; PJI3d 2:320 [‘You must determine the economic value of (the decedent) to (his distributees) on (the date) when (he) died” “In determining that economic value, you should consider * * * the portion of (his) earnings that (he) *581 would have spent in the future for the care and support of (them)”]; Public Adm’r of Kings County v U.S. Fleet Leasing, 159 AD2d 331 [cognizable claim for pecuniary loss in wrongful death action depends not only on whether decedent would have been legally obligated to support the beneficiary but, if not, whether there is evidence decedent should have voluntarily done so]).
CONCLUSION
For the foregoing reasons, it is hereby ordered that defendants’ motion and cross motions are granted; and it is further ordered that all claims seeking recovery of pecuniary damages allegedly sustained by individuals other than Allan S. Larson and Nanette Larson, the decedent’s distributees at the time of his death, are dismissed; and it is further ordered that all claims seeking “loss of inheritance” by the decedent’s distributees are dismissed.