HENRY KREMER, Respondent, *v.* NEW YORK EDISON COMPANY, Appellant.

*Negligence — injury to one employee from an excessive current furnished to an electrical machine by another employee — liability of the master where there is no automatic current breaker — what charge as to the negligence of the fellow-servant is not a ground for reversal — verdict for $19,000 sustained.*

In an action brought to recover damages for personal injuries sustained by the plaintiff, it appeared that the defendant maintained a number of electrical generating stations in the city of New York; that the plaintiff was employed as an oiler at the Duane street station, and that one Brinkman was employed in the One Hundred and Twenty-first street station; that on the night of the accident Brinkman turned a wrong switch, thus transmitting an electrical current of an excessive voltage to a machine in the Duane street station, which current caused the latter machine to fly into pieces, some of which struck and injured the plaintiff.

It appeared that the machine in question was fitted with a current breaker which was not automatic in its action; that the presence of an automatic current breaker on the machine would have prevented the accident, and the evidence was sufficient to warrant a finding that automatic current breakers were in general use on similar machines.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That, assuming that Brinkman was a fellow-servant of the plaintiff, and that he was guilty of negligence in turning the wrong switch, this did not relieve the defendant from liability, as the evidence warranted a finding that the defendant, in the exercise of reasonable care, should have anticipated that the machine in question might be subjected to a current of dangerous voltage from a variety of causes other than the negligence of the plaintiff's fellow-servants, and was negligent in not providing the automatic current breaker, which would have effectually prevented such an occurrence;

That the absence of the automatic current breaker was a juridical cause of the accident, and that consequently the defendant could not escape liability on the theory that the act of Brinkman in turning the wrong switch, and not the failure to furnish an automatic current breaker, was the cause of the accident;

That error prejudicial to the defendant could not be predicated upon the charge of the trial judge, the effect of which was, that if the defendant, in the exercise of reasonable care, should have apprehended that from some cause, not the result of negligence of the plaintiff's fellow-servants, an overcharge of current was likely to enter this machine, and failed to use reasonable care to guard against it, the plaintiff could recover, irrespective of what did in fact produce the overcharging;

That, after a consideration of the evidence, the Appellate Division could not say that a verdict for $19,000 rendered in favor of the plaintiff was excessive.

WOODWARD and JENKS, JJ., dissented.

APPEAL by the defendant, the New York Edison Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of February, 1904, upon the verdict of a jury for $19,000, and also from an order entered in said clerk's office on the 7th day of March, 1904, denying the defendant's motion for a new trial made upon the minutes.

*H. Snowden Marshall* [*Frederick E. Fishel* with him on the brief], for the appellant.

*Stephen C. Baldwin*, for the respondent.

MILLER, J.:

I think there was sufficient evidence to warrant the submission to the jury of the question as to whether automatic current breakers, suitable to be used in connection with machines similar to the one involved here, were in general use, and if so, whether the defendant was negligent in not so equipping this machine. Two witnesses for the plaintiff testified that such an appliance was in general use ; one of these, however, derived his knowledge solely from reading, and the other on cross-examination testified that he had actual knowledge of only one plant using as high a voltage as 6,600 where such appliance was used, but he knew of several where over 5,000 voltage was employed. Three experts were called by the defendant, the effect of whose evidence was that such appliances were in practical operation where the voltage did not exceed 2,000, but were in an experimental state so far as being adjusted to a current of higher potential than 2,000 volts. Their evidence also was that the working capacity of the machine in question was from 300 to 350 volts on the alternating side, and 240 volts on the direct current side. The evidence of the plaintiff's witnesses was to the effect that this accident could not have happened had the machine been equipped with a breaker adjusted to work automatically, or with a fuse on the direct current side, and it may be said that the plaintiff's theory that the excess current entered the machine from the " D. C." side is supported by the evidence of the defendant's own witnesses to the effect that a current of 6,000 voltage would instantly have blown out the fuse on the alternating side, which was found to be intact after the accident.

The plaintiff and Brinkman, whose act in turning the wrong switch produced the condition resulting in the accident, were engaged at different stations in separate and distinct employment in which the plaintiff had neither the means nor the opportunity of knowing either the character of the work performed by Brinkman or his competency to do it. Conceding, for the purpose of the argument, that Brinkman's act was culpably negligent, and assuming, without deciding, that notwithstanding the peculiar circumstances of this case he was so far the fellow-servant of the plaintiff as that the defendant was not bound to anticipate or guard against the consequences of his negligence, this judgment may nevertheless be supported. Of course, except that furnished by the occurrence itself, there is no direct evidence of any cause likely to produce an overcharge of current in this machine, which, consistent with the above assumption, the master was required to anticipate and guard against. But it is conceded not only that devices and circuit breakers, not automatic, were in general use, but that they were used by this defendant to break the circuit when the current reached a potential higher than the point of safety; it may fairly be inferred from the evidence of experts of both parties that such devices were necessary to insure any degree of safety in the generation and use of these extremely dangerous electric currents, and the evidence warranted the jury in finding that the defendant, in the exercise of reasonable care, should have anticipated that a dangerous overcharge of current in this machine was likely to occur from a variety of causes other than the negligence of plaintiff's fellow-servants. The plaintiff complains because the device used was not suitable, and because, in fact, it was not used at all on the side of the machine from which the current causing the accident entered, and the suggestion of the defendant that there was no proof that it was practical or necessary to have a breaker on the direct current side is met by the testimony of its own witness to the effect that the breakers installed at the Duane street plant were in fact direct current circuit breakers. If the defendant should have apprehended and guarded against the occurrence from any cause, its failure to do so constituted negligence, and a recovery cannot be defeated by the fact that in the particular case the overcharging, which it was bound to guard against, was produced by a cause which it was not bound to

anticipate, to wit, the negligence of plaintiff's fellow-servant; its negligence consisted in not having furnished a reasonably safe appliance, and the fact that in the particular case the negligence of the coservant concurred to produce the injury does not deprive the plaintiff of his remedy for the defendant's wrong, as the "negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty." (*Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 N. Y. 557, and cases cited.)

But it is said that the negligent act of Brinkman in turning in the wrong switch, and not the failure to supply an automatic current breaker, was the proximate cause of the accident. This conclusion is based on the reasoning in cases where the question determined was whether some independent agency had intervened to break the causal connection between the cause alleged and the result. The defendant had a series of generating plants, so connected that currents of 6,600 voltage could be transferred from one station to another, as the demand upon the different stations varied. The plaintiff, having no duty to perform except to oil the engines at the Duane street station, a fellow-servant of Brinkman employed at the One Hundred and Twenty-first street station only in the sense that he was employed by the same master, unconscious of danger and with no means of warning, received the grievous injury complained of, because, as the jury have said, the master failed to provide reasonably safe machinery at the place where the injury was received. But because the current causing the injury was set in motion by the act of a fellow-servant employed as remotely from the plaintiff in practical effect as though separated by the maximum distance possible for electricity to travel, it is urged that the negligence of the fellow-servant, and not that of the master, was the proximate cause of the injury. The same reasoning would prevent a recovery in every case of failure on the part of a master to discharge his duty in the adoption of safety appliances designed only as preventives. Of course the absence of the circuit breaker could not in a literal sense be said to have been the cause of this accident; its presence, however, would have prevented it, and its absence, being a breach of duty on the part of the master, was a juridical cause. The negligence of the master was continuous, and harmless

until a dangerous condition was produced, but the cause producing such condition, instead of intervening to break the causal connection between such negligence and its effect, merely concurred with it to produce the effect. (*Coppins* v. *N. Y. C. & H. R. R. R. Co.*, *supra; Stringham* v. *Stewart*, 100 N. Y. 522; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 551; *Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 127 id. 657; *Quill* v. *Empire State Tel. & Tel. Co.*, 92 Hun, 539, 546.)

I do not think that the defendant can complain of the charge. For reasons already stated, it was not error to submit to the jury the question whether there was a fuse on the direct current side of the machine; and the other portion of the charge challenged in this court does not present ground for reversal. The court did not submit the question of Brinkman's negligence to the jury, but clearly pointed out that the plaintiff's right to recover depended solely on the question as to whether the defendant should have apprehended such a condition as resulted, and guarded against it. What the court said as to Brinkman was only illustrative of the question which the court was discussing, viz., whether in the exercise of reasonable prudence the defendant should have anticipated that an overcharge of current might enter this machine. It is apparent that the verdict was not made to depend in the slightest upon the character of Brinkman's act. The court distinctly charged that the defendant was not bound to anticipate or guard against the possibility that any fellow-servant would negligently turn the wrong switch. The effect of the whole charge was that if the defendant, in the exercise of reasonable care, should have apprehended that from some cause, not the result of negligence of the plaintiff's, fellow-servants, an overcharge of current was likely to enter this machine, and failed to use reasonable care to guard against it, the plaintiff could recover, irrespective of what did in fact produce the overcharging. It is true that in the colloquy with counsel, after several requests had been made and passed upon, the court said: "I proceeded on the assumption that this man handled the switch with due care, but in a moment of forgetfulness made a mistake." This remark was not addressed to the jury; no exception was taken to it, and I do not think the jury could have been misled by it. It is difficult to understand how a jury could have been confused by a

charge remarkable for its clearness and simplicity, or how they could have been led to think that the defendant was liable for the act of Brinkman, when in plain and concise language their attention was directed to the sole question upon which the defendant's liability depended.

The verdict is a large one. But, considering the age of the plaintiff, his earning capacity at the time of the accident, the different operations which he had to undergo, with the attendant pain and suffering, and the grievous character of the injury, which the defendant did not attempt to controvert, we cannot, without invading the province of the jury, say that it was excessive. These conclusions lead me to vote for affirmance of the judgment and order appealed from.

HIRSCHBERG, P. J., and RICH, J., concurred; WOODWARD, J., read for reversal, with whom JENKS, J., concurred.

WOODWARD, J. (dissenting):

The plaintiff, a man about thirty-four years of age, was employed by the defendant in its Duane street electric lighting station, as an oiler of machinery, on the 20th day of June, 1901. He had been in such employ from November, 1899. At about seven o'clock in the evening of the twentieth of June, while in the discharge of his duties, he noticed that a machine, known as a commutator, or rotary converter, had become red hot, and this was followed by pieces of copper and iron being thrown about the room. He attempted to run away, after being hit by a piece of the copper, but was struck by a piece of iron on his leg, and the leg was cut off. An examination after the accident showed that the commutator had, by some action of the electric currents, been heated to such an extent that the motion of the machinery caused it to fly to pieces, with the result to the plaintiff above stated. Upon the trial it was developed that the defendant has a series of electric lighting stations, connected by a main cable inclosed in a conduit, and it was customary, after the down-town places had been closed, to connect the Duane street station with the up-town plants, to aid in furnishing the current to residences, etc. On the evening in question one Harry L. Meyers, foreman of the One Hundred and Twenty-first street station, telephoned the Duane street station for more power

to meet the up-town demand, and having made his arrangements he sent one Brinkman, who is conceded to have been a competent man, to the high-tension switch room to switch in "No. 6,601 feeder." Instead of doing this Brinkman put in the wrong switch, which was followed by an electric display in the One Hundred and Twenty-first street station which threw Brinkman down a flight of stairs and threatened to do much damage. Mr. Meyers took steps to prevent the local damage and then examined the switch board, which he found in a condition which he says would result in a short circuit in the Duane street converter, and produce the accident for which the plaintiff seeks damages. This explanation of the accident appears to be fully conceded, and it would seem under the authorities in this State that, as it was due to the negligence of a fellow-servant, who is conceded to have been a competent man, the plaintiff is without a remedy. The defendant's motion to dismiss upon the ground that the plaintiff had failed to establish facts sufficient to constitute a cause of action, and that the action was due to the negligence of a fellow-servant, were, however, overruled, and the principal question litigated and submitted to the jury was whether the defendant was negligent in not providing its machine in the Duane street station with automatic current breakers or fuses, which, it is claimed, would have made the accident impossible. The jury, under a charge which submitted practically but this one question, has found a verdict for the plaintiff, resulting in a judgment for something over $20,000 and the defendant appeals to this court.

It was not disputed that the defendant had equipped its machine with current breakers; that it had a competent man on hand to operate such current breakers, but there was a dispute in the evidence whether there was not a better contrivance — an automatic current breaker — which was in more or less general use, and this question was fully litigated, with the result that the jury has found that the defendant was negligent in not providing this automatic current breaker, or in not having an approved fuse upon both sides of the machine, but it seems to me that all of this part of the testimony is wholly immaterial, from the fact that the lack of these contrivances was not the proximate cause of the plaintiff's injury. If the accident had been initiated by the defendant, or if it had

been due to the neglect of the defendant in furnishing proper appliances at the station where Brinkman was employed, or if it had been caused by the falling or crossing of the wires, where such accident was likely to happen, and where reasonable foresight and prudence would have suggested such a result, it might be important to determine the question of defendant's negligence at the Duane street station, but, under the conceded facts in this case, the question of whether the defendant had proper safeguards about its machine in the Duane street station is of no importance, because the failure to have these appliances was not the proximate cause of the injury, nor was it a cause concurring with any antecedent negligence on the part of the defendant. The plaintiff would not have been injured except for the negligent act of a fellow-servant engaged at the One Hundred and Twenty-first street plant. There is no suggestion that the injury would have occurred except for the fact that the plaintiff's fellow-servant disregarded his orders and turned on the wrong switch, and as it was no part of the defendant's duty to anticipate that a competent man would disregard his instructions in dealing with the proper appliance which had been provided, it did not owe the plaintiff the duty of making it impossible that an accident should result from such negligence on the part of Brinkman. The test of negligence is not whether it was possible to prevent an accident, but whether the defendant, under the circumstances, owed the duty of preventing an accident which would not have occurred except for the negligence of a fellow-servant. The duty to provide a reasonably safe place in which the servant is to labor, the duty to provide reasonably safe tools and appliances, do not charge the master with liability for an accident which occurs to the servant, unless the particular accident results because of a neglect of these duties; the master's negligence must be the proximate cause, not a mere incident in a chain of events set in motion by some one for whom the master is not responsible. There is no suggestion that this particular accident would have happened except for the carelessness of Brinkman, and the fact that the defendant had not anticipated this carelessness and made it impossible for the plaintiff to be injured, does not, in my opinion, constitute actionable negligence on the part of the defendant, who was liable only for negligence which should be the proximate cause of the injury. It

may be conceded that if the defendant's cables connecting its several stations had been exposed to the danger of contact with other wires carrying heavy currents of electricity it would have been its duty to have provided the best practical appliances, and it might have been liable if it had failed to do this and an accident had resulted from contact with other wires, but it does not follow that if the accident had resulted from the negligence of a fellow-servant in misplacing a switch that the same liability would follow, for it is not the duty of the master to provide against the errors of competent servants, at least in so far as this duty relates to fellow-servants.

This much upon the reason of the case. The authorities, I believe, sustain the propositions above set forth. "The proximate cause," say the court in *Insurance Co.* v. *Boon* (95 U. S. 117, 130), "is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

In the case of *The G. R. Booth* (171 U. S. 450, 458) the court cites with approval the language of the court in *Milwaukee & St. Paul R. Co.* v. *Kellogg* (94 id. 469) in reference to what constitutes the proximate cause, as follows : " The inquiry must always be whether there was any intermediate cause, *disconnected from the primary fault*, and self-operating, which produced the injury." The court continues : " In the present case the burning of the city hall and the spread of the fire afterwards was not a new and *independent* cause of loss. On the contrary, it was an incident, a necessary incident and consequence, of the hostile rebel attack on the town — a military necessity caused by the attack. It was one of a continuous chain of events brought into being by the usurped military power — events so linked together as to form one continuous whole."

In *Goodlander Mill Co.* v. *Standard Oil Co.* (27 L. R. A. 583, 586; 63 Fed. Rep. 400, 405) a proximate cause is defined as follows: " The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." And the same court say (p. 587):

"The remote cause is that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof. The absence of the valve was, doubtless, in a sense, a cause of the injury — an antecedent cause; but, where the negligent act is not wanton or *malum in se,* the law stops at the immediate, and does not reach back to the antecedent cause." The failure of the defendant to install an automatic current breaker was not negligent, in so far as it relates to the accident now under consideration, because the failure to have such a current breaker was but the remote cause of the accident, and the defendant was not bound to anticipate carelessness on the part of competent servants any more than a railroad company is bound, in behalf of its employees, to anticipate that engineers and conductors will misunderstand or disregard the orders under which trains are operated. The rule which I conceive governs in the present case is, that "Although there may have been such an act or omission as would have rendered the defendant liable had damages proximately resulted therefrom, yet if they did not proximately so result the defendant is not liable though the plaintiff is damaged and though such damages would not have resulted but for the act or omission complained of." (21 Am. & Eng. Ency. of Law [2d ed.], 485, and authorities cited under note 2.) Assuming that it would have been negligent for the defendant to operate its machine without an automatic current breaker if the damages had been caused by its primary negligence, there is no justice in holding the latter liable where it had discharged its duty in providing competent fellow-servants, and the accident results from the carelessness of such servant. The proximate cause is "that which immediately precedes and produces the effect." (*Hoffman* v. *King,* 160 N. Y. 618, 629; *Trapp* v. *McClellan,* 68 App. Div. 362, 365.) As there was no dispute as to the original cause of the accident, the question of the proximate cause was one of law to be determined by the court. (*Hoffman* v. *King, supra,* 628), and it was error to submit the case to the jury.

I am of opinion that the charge of the learned trial court, as modified, constituted error calling for a reversal of the judgment. The court, after stating that the defendant was not bound to anticipate the mere possibility of an accident, added: "But if, in the

imperfection of human hands and human eyes and human people, as we employ them and as we know them, by mistake, by drowsiness, by anything that pertains to the natural imperfection of man, if, considering that you find that an error like this of the man in 121st Street was a probable error, or an error likely to occur, that would misdirect these currents and cause the thing like this, then you may find it was something that in reasonable prudence should have been guarded against." Obviously, this is not the law, for it makes the master liable for the negligence of competent fellow-servants. Defendant objected to this portion of the charge, and the court modified it by saying, " I mean by some rule or regulation, or some apparatus or machinery," and defendant objected to the charge as modified. Subsequently, defendant's counsel read his fourth request to charge, granted by the court, as follows: " In considering whether the appliances furnished by it were reasonably safe, the defendant was entitled to rely upon and expect the exercise of reasonable care on the part of its employees, and was not bound to anticipate or guard against the possibility that any fellow-servant of the plaintiff would negligently turn the wrong switch." This might have been construed to have corrected the error in the main charge, but the learned court commented: " I charge that, and meant to keep close to that in my charge. It may possibly be I went a little beyond it, although I had no intention of doing so. I mean that the company has a right to presume that the other employees will be reasonably careful; and the things that happen in the best regulated families, as it is said, outside of that which causes danger, and so on — I mean the things that happen, although reasonable care and prudence were exercised by the employees."

This, it seems to me, could have no other effect than to confuse the jury. There was no evidence in the case, so far as I am able to discover, that there was any defect in the switchboard at the One Hundred and Twenty-first street station; that there was any drowsiness or other imperfection on the part of Brinkman — certainly none for which the defendant was in any manner responsible — and the charge, as it was finally completed to the jury, must have left them with the impression that they had a right to find that in some way the master was liable to the plaintiff for the act of Brinkman. Unless the defendant was responsible for his acts, there could be no

relation of the defendant to the proximate cause of the injury, and if the question was to go to the jury at all, it was important that the law should be stated with great clearness. If the evidence had warranted the jury in finding that the defendant, though originally discharging its duty in the employment of a competent fellow-servant, had imposed such duties, and had required such hours of service that he could not, in the natural course of events, be expected to remain competent, there might have been a question for the jury, under a proper charge, but under the evidence as I find it no such condition of affairs existed, and a charge which permitted the jury to speculate as to whether the defendant ought to have anticipated that Brinkman or some other fellow-servant of the plaintiff would disregard his orders, was error. This duty the defendant probably owed to third persons, who might lawfully have been in a position to receive injuries, but it owes no such duty to the plaintiff, who assumes the risks of just such accidents.

The judgment and order appealed from should be reversed and a new trial granted, with costs.

JENKS, J., concurred.

Judgment and order affirmed, with costs.