Estelle Sider, as Administratrix, etc., of James E. Yates, Deceased, Appellant, Respondent, *v.* General Electric Company and The Niagara Falls Power Company, Respondents, Appellants.

Fourth Department, November 22, 1922.

Negligence — action for wrongful death — damages — action instituted by decedent's wife as administratrix and renewed after her death by administratrix de bonis non — measure of damages is loss sustained by wife from death of husband to her death — death caused by short circuit in transformers furnished by one defendant for other defendant — question of fact as to cause of short circuit — manufacturer liable for its negligence though purchaser negligent also — question for jury as to negligence of manufacturer and purchaser — when both manufacturer and purchaser liable.

The measure of damages in an action for wrongful death, instituted by a wife as administratrix of her deceased husband, and revived and continued in the name of the administratrix *de bonis non* of the decedent after the death of the wife, is the loss sustained by the wife from the date of her husband's death until her death and the damages are not the same as though the decedent's wife had not died.

Plaintiff's intestate was killed when current transformers, instruments used for measuring electric current, short circuited while being installed. The plaintiff claimed that the short circuit was caused by packing blocks left in the transformers by the manufacturer, one of the defendants. Plaintiff contended also that the failure of the purchaser to inspect the instruments before installing them and turning on the power constituted negligence.

*Held*, that it was a question of fact for the jury to determine whether or not the short circuit was caused by the packing blocks.

If the purchaser of the transformers was negligent in failing to inspect them before installation and in failing to discover the packing blocks, that negligence would not relieve the manufacturer from liability for its negligence in placing the blocks in the transformers and in not giving proper notice that they were so placed.

The court properly submitted to the jury the question whether the manufacturer was negligent in placing the packing blocks in the transformers and whether it failed to give notice to the purchaser that the transformers should be inspected and tested before using.

It was likewise a question for the jury to determine whether or not the purchaser used proper care in inspecting and testing the transformers before turning on the electric current.

If the manufacturer created a dangerous situation, failed to give notice to the purchaser of that situation but relied upon the general duty of the purchaser to use care so to handle the machine as not to injure others, and the purchaser failed to perform its duty, then both are liable, one for delivering a machine in a dangerous condition without notice of such condition, and the other in failing to use reasonable care in inspecting and testing after it received the machine.

Sears, J., dissents in part, with opinion.

APPEAL by the plaintiff, Estelle Sider, from so much of an order of the Supreme Court, made at the Niagara Trial Term and entered in the office of the clerk of the county of Niagara on the 30th day of July, 1921, as sets aside a verdict in favor of the plaintiff for $21,200, unless the plaintiff stipulates to reduce such verdict to $2,500.

Appeal by the defendant General Electric Company and by the defendant the Niagara Falls Power Company, from so much of said order as denies their motions to dismiss the complaint and their motions for a new trial on the ground that the verdict was contrary to law and to the evidence.

The plaintiff failed to stipulate to reduce the verdict, and appealed from the order. The order was made upon the sole ground that the verdict was excessive. It is urged by the defendants that even though the order was erroneous in setting aside the verdict on the sole ground of excessive damages, nevertheless it should be affirmed on other grounds stated in their motions. No question is raised about the practice adopted.

*Hamilton Ward* [*Philip A. Laing, William J. Flynn, Harold J. Tillou* and *Carlos C. Alden* of counsel], for the plaintiff.

*Moot, Sprague, Brownell & Marcy* [*Richmond D. Moot, Adelbert Moot* and *Welles V. Moot* of counsel], for the defendant General Electric Company.

*Dudley, Stowe & Sawyer* [*Franklin D. L. Stowe* of counsel], for the defendant the Niagara Falls Power Company.

HUBBS, J.:

On October 31, 1920, James E. Yates was killed in the transmission tower of the defendant the Niagara Falls Power Company. His death was caused by a short circuit in a high-power transmission line. He left him surviving his wife, Georgia A. Yates, his sole statutory beneficiary. (See Code Civ. Proc. § 1902 *et seq.;* now Decedent Estate Law, § 130 *et seq.*, as added by Laws of 1920, chap. 919.) She was appointed administratrix of his estate and brought this action to recover damages against the defendants for negligently causing the death of her husband. She died pending the trial and the action was revived and continued in the name of the present plaintiff as administratrix *de bonis non* of James E. Yates, deceased.

The trial court charged the jury that " the damages to be awarded here are the same as if Mrs. Yates had survived," and refused to charge upon the request of the defendants that " the recovery in this action, if any, can be only for pecuniary loss sustained by Mrs. Yates from the date of Mr. Yates' death until her death, also the

necessary funeral expenses and the pecuniary losses sustained by Mr. Yates' brothers and sisters, if any." The defendants duly excepted to such charge and refusal to charge as requested. The jury found a verdict for $21,200. The trial court made an order setting aside the verdict as excessive, unless the plaintiff should stipulate to reduce it to $2,500. The plaintiff failed so to stipulate and has appealed from the order. The learned trial justice handed down an opinion in which he stated that the motion to set aside the verdict was granted because of error in the charge upon the question of damages. He stated that the charge heretofore quoted was erroneous and that it was error not to have charged the request heretofore quoted. Such holding was based upon the case of *Pitkin* v. *N. Y. C. & H. R. R. Co.* (94 App. Div. 31), decided in this department, and upon the case of *Radley* v. *Leray Paper Co.* (156 id. 432), also in this department, which latter case approved the statement made by Mr. Justice HISCOCK in the *Pitkin* case, as follows: " The father was the next of kin and solely entitled as such under the statute to any damages which resulted from the death. He had died before the trial and, therefore, there was ascertained the exact period during which he would have been entitled to the benefits of the life of the intestate. We see no way under the statute in which the jury could be allowed to measure such benefits by any such uncertain rule as would have been applicable in case the father had still been alive at the time of the trial, or in which the relationship to the intestate of other people who were not his next of kin at the moment of death can be made the basis of an additional recovery." We can add nothing to the reasoning of Mr. Justice HISCOCK in that case and no decisions have subsequently been made by the courts of this State affecting that decision. We think that the trial court properly followed that decision and the order appealed from should be affirmed.

The whole case has been argued in this court upon the theory that the order setting aside the verdict may be sustained even though we hold that the trial court placed its decision upon an untenable ground. As a new trial will have to be had it seems proper for us to state our opinion upon the questions which, necessarily, will be involved upon such trial.

The Niagara Falls Power Company, at the time of the accident in question, was engaged in producing and distributing electricity and owned a switching tower at North Tonawanda. At this switching tower there was a branch line leading to the station of the Tonawanda Power Company, a brick building situate six feet west of the Niagara Falls Power Company tower. The Tonawanda Power Company was also engaged in transmitting and distributing

Fourth Department, November, 1922. [Vol. 203

electric power but did not produce it. It procured its power of the Niagara Falls Power Company, taking it through a switch at the tower of the Niagara Falls Power Company.

For some days before and on the night of the accident the Niagara Falls Power Company had been making some changes in its transmission line and apparatus at the tower for the purpose of increasing the amount of power to be delivered to the Tonawanda Power Company from 300 amperage of flow to 600 amperage, maintaining the same voltage, that is, 22,000 volts, and by such change doubling the amount of power to be delivered to the Tonawanda Power Company. In order that the Niagara Falls Power Company might deliver such increased power, it became necessary to install new measuring devices as the old measuring devices were not adequate to measure a flow of 600 amperes. The change also involved altering switches, wires and insulators. The Niagara Falls Power Company ordered two new measuring devices, called " current transformers " from the defendant General Electric Company. A current transformer is a machine or apparatus used to measure the electric current. It consists of an iron tank or cylinder, filled with oil. The main line wire enters the cylinder at the top, is looped around the inside of the tank in oil and leaves the tank through the cover. The current is carried on such main line wire through the cylinder and oil. The looped main line wire is called the " primary coil." In addition to the main line wire which makes the primary coil there is a small wire which enters the cylinder through the cover and is coiled in the cylinder and oil a short distance from the primary coil. This is called the " secondary coil." It also runs out through the top of the cylinder. It is not practical to measure electricity while passing through the main line wire and primary coil at a high voltage and at a rate of flow of 600 amperes. When the current is passing through the primary coil at a high voltage and amperage, it excites in the small secondary coil a small current which can be measured by a meter. The current passing through the primary coil and main line wire is ascertained by measuring the flow in the secondary coil and applying a known ratio. The two coils are suspended in the cylinder from the cover and are surrounded by oil. The oil acts as an insulator and prevents the electricity from jumping from the main line wires to the cylinder.

Such current transformers were of a standard type manufactured by the defendant General Electric Company for the purpose of measuring electrical energy. The said defendant had furnished the Niagara Falls Power Company with two transformers and the defendant the Niagara Falls Power Company was engaged at the time of the accident in installing them in the tower. The plaintiff's

intestate was an employee of the Tonawanda Power Company and was present in the tower watching the work being done by the employees of the defendant the Niagara Falls Power Company. He was rightfully there and it is not questioned but what the defendant the Niagara Falls Power Company owed him a duty of exercising reasonable care for his safety. At two-forty-seven o'clock, A. M., on the day of the accident the operator of the Tonawanda Power Company called the operator of the Niagara Falls Power Company at Niagara Falls on the telephone and told him that they were going to put the load back on. At two-fifty o'clock, A. M., there was a complete short circuit, the volt meters at Niagara Falls going to zero. Something had happened at the tower where the men were at work finishing the changes. The building was filled with flames and many wires were burned. There were thirteen men in the tower at the time and all died as the result of injuries.

This action was brought against the defendants on the theory that both were negligent and that the negligence of each was a proximate cause of the accident. The specific negligence charged against the General Electric Company was that it had placed in each of the two current transformers sold to the defendant the Niagara Falls Power Company a wooden packing block, made by nailing together pieces of wood; that such block was placed under the primary coil, practically filling the space between the bottom of the coil and the bottom of the cylinder containing the coil; and that no notice was given to the purchaser that the block was there and no caution to inspect for anything of that kind. The current transformers were set up, filled with oil and connected with the current with the wood packing in each. The plaintiff contended on the trial that the short circuit resulted from the presence of the packing blocks in the transformers. After the accident an examination of the transformers disclosed that there had been a short circuit in each, that the current had jumped from the primary coils to the wood packing blocks and the nails contained in each, and that an electric arc had burned a hole in the bottom of each cylinder. The space occupied by the packing block should have been filled with oil to act as an insulator. It is conceded that the presence of the packing block made the transformer, when the current was turned on, a dangerous thing.

It is urged by the defendant General Electric Company that there was no evidence which justified sending the case to the jury upon the question of its negligence, because there was no evidence that the presence of the packing blocks caused the short circuit. We think that question was one of fact for the jury to determine.

Different theories were advanced upon the trial as to the cause of the short circuit, but upon the whole record that question was one of fact.

It is also contended by the defendant General Electric Company that it is not liable, even though it be conceded that the short circuit was caused by the packing blocks in the transformers, because no accident could have happened from the use of packing blocks except through the negligent use of the transformers by the purchaser; that the negligence of the purchaser, if any, consisted in its placing oil in the transformers and connecting them up for use without inspecting and testing them to see that nothing was contained in the cylinders that should not be there; that such failure to inspect and test was negligence; and that such negligence prevented a recovery against the manufacturer for its negligence in placing the blocks in the transformers.

We are unable to agree with such contention. If the manufacturer was negligent in placing the blocks in the transformers and in not giving proper notice that they were so placed, under the circumstances disclosed by the evidence, and the purchaser was also negligent in not making a proper inspection and test before using, that fact would not relieve the manufacturer from liability to the plaintiff.

" If the negligent acts of two, or more, persons, concur in contributing to an accident, the injured person may hold them jointly and severally liable. Where concurrence in causes is charged, the test is, simply, could the accident have happened without their co-operation." (*Sweet* v. *Perkins*, 196 N. Y. 482.)

The jury has found that the presence of the packing blocks caused the short circuit. Did the act of the manufacturer, the defendant General Electric Company, in placing the packing blocks in the current transformers create a dangerous situation which finally resulted in the accident? Could the accident have happened without its act of so placing the packing blocks? Clearly, placing the packing blocks in the transformers made them much more liable to short circuit. Therefore, its act in so placing the packing blocks was a contributing cause of the accident and the accident would not have happened without such cause and such cause was a proximate cause.

The manufacturer knew that the transformers were to be used to measure a powerful current of electricity; it knew that if they were used with the packing blocks left in it would create a very dangerous situation. With that knowledge it was called upon to exercise care commensurate with the danger. It contends that it did use such care, that it gave notice to the purchaser that the transformers

should be inspected and tested before using. That was denied by the purchaser and a large amount of evidence was received upon that subject. It would serve no useful purpose to call attention to the evidence. It is sufficient to say that upon all the evidence it was a question of fact which was properly submitted to the jury.

Prior to the decision in the case of *Thomas* v. *Winchester* (6 N. Y. 397) in this State manufacturers were not subject to any duty outside of contract. It was held that their acts, although negligent, were not likely to cause an injury to any one except the purchaser. Since that decision it has been held in many cases that where the article manufactured, when used by third persons, is accompanied with danger, there is a duty on the part of the manufacturer to use care, and if there is negligence in manufacturing which results in injury to third persons, the manufacturer may be liable for the damages caused. (*MacPherson* v. *Buick Motor Company,* 217 N. Y. 382.)

The General Electric Company does not question the principle established by those cases but seeks to escape liability upon the ground that the purchaser by failing to inspect and test the transformers was negligent, and to engraft upon the principle the limitation that the manufacturer is not liable for negligence to a third person if the purchaser is negligent in failing to inspect and test. It finds certain statements in the opinions of the courts which lend color to such contention. We do not think, however, that under the facts in this case the manufacturer is relieved as a matter of law from liability because of the negligence of the purchaser in failing to make a proper inspection and test of the transformers before using them. The question of said defendant's negligence still remained a question for the jury. (*Kremer* v. *New York Edison Company,* 102 App. Div. 433; affd., 186 N. Y. 557.)

It would be strange if a manufacturer could place in a completed machine to be used in an extremely hazardous business an unusual foreign substance which would have the effect of making the machine an engine of destruction and fail to give the purchaser notice or warning of the presence of such foreign substance and then escape liability upon the ground that the purchaser was also liable for negligence because it failed to inspect and remove the foreign substance. The manufacturer should not be relieved, in an action brought by a third person, from the effect of its negligence in making the machine dangerous and failing to notify the purchaser of such fact, by the fact that the purchaser also owed a general duty to such third person to use care, and that the use of such care required the purchaser to inspect and test before using

29

the machine. If the manufacturer had given to the purchaser notice that the packing blocks had been placed in the machine a different question would be presented, but the jury has found that the notice was not given. If the manufacturer created a dangerous situation, failed to give notice to the purchaser of that situation but relied upon the general duty of the purchaser to use care so to handle the machine as not to injure others, and the purchaser failed to perform its duty, then both are liable, one for delivering a machine in a dangerous condition without notice of such condition, and the other in failing to use reasonable care in inspecting and testing after it received the machine.

The Niagara Falls Power Company was engaged in an extremely hazardous business; it was required to use care commensurate with the hazard, and we think it was a fair question for the jury to determine whether or not it had used such care in inspecting and testing the machines before turning on the full power. It appeared that it was so equipped that it could have turned on a small current of electricity at first and that it could have increased the amount gradually, thereby testing the machines after they were set up and connected. Why it did not do that as it was its custom to do in certain cases where new wiring had been put in does not appear.

Several questions growing out of exceptions to the charge and rulings on the admission of evidence have been argued. We do not deem it advisable to discuss those questions as they may not occur on a new trial. We hold that the question of whether or not the short circuit was caused by the packing blocks was for the jury, that the question of whether or not the defendant General Electric Company was negligent in placing the packing blocks in the machines and shipping them without notice to the Niagara Falls Power Company was also for the jury, and that the question of whether or not the Niagara Falls Power Company was negligent in not properly testing and inspecting the machines before turning on the full current was also for the jury. Upon a new trial it may develop that other questions of negligence should be submitted to the jury.

The order setting aside the verdict and granting a new trial because of error in the charge upon the question of damages should be affirmed, without costs to either party.

All concur, except SEARS, J., who, in a separate memorandum, dissents only from the affirmance of the facts, but otherwise concurs.

SEARS, J. (concurring except as to the absence of error of fact):

While I concur in the opinion of Mr. Justice HUBBS, I also find the verdict unsupported by the evidence in the light of a charge made

by the learned trial justice in response to a request of the counsel for the defendant General Electric Company. The request is as follows: " I ask the Court to charge the jury that if the Niagara Falls Power Co. should have tested the primary coils of this transformer before putting it in service, to see that it was all right, and if a proper test of such primary coils would have disclosed the blocks, or if the Niagara Falls Power Co. should have tested the entire installation at the tower at North Tonawanda after it was installed, before letting loose all of this power at that tower, and they failed to do so, then the Niagara Falls Power Co. would be liable and the General Electric Co. would not be." The Court: " If such failure was the cause of the trouble." Counsel for the defendant General Electric Company: " If by such tests they would have discovered the presence of these blocks." The Court: " I so charge."

As I read the record, the only evidence of negligence on the part of the defendant Niagara Falls Power Company was *first,* the failure to test the transformers before connecting them in the electric circuits at the Tonawanda power house, and *second,* the failure to turn on the power slowly so the defects would become apparent before the full amount of power was permitted to pass through the circuits at the Tonawanda power house. The plaintiff contended that either of these tests would have disclosed the presence of the blocks in the transformers and would, therefore, have prevented any accident happening as a result of the presence of the packing blocks in the transformers.

The jury found a verdict against both of the defendants which, of course, was a finding that the defendant Niagara Falls Power Company was negligent in one of the respects mentioned, and under the charge of the court in such case the jury was directed to find a verdict in favor of the defendant General Electric Company. I, therefore, deem the verdict inconsistent with the charge mentioned and favor sustaining the order setting aside the verdict on this ground also.

The charge referred to is, however, in my opinion erroneous. It was still possible for the act of the General Electric Company in sending out the transformers with the packing blocks in the bottom of the cases without informing the Niagara Falls Power Company, the purchaser, of the blocks by adequate notice, to be held the proximate cause of the fearful calamity out of which this action arises, even though the defendant Niagara Falls Power Company was also negligent in failing to discover the presence of the blocks by proper test and experimental operation. The question of proximate cause may be stated thus: Would a reasonably prudent

man anticipate the danger of putting these transformers in service without the removal of the blocks? Whether or not there might be intervening negligence should be immaterial if the danger even though resulting from negligence ought to have been anticipated.

In *MacPherson* v. *Buick Motor Company* (217 N. Y. 382) a somewhat similar question was left open, Judge Cardozo (at p. 390) saying: "We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow. We are not required at this time to say that it is legitimate to go back of the manufacturer of the finished product and hold the manufacturers of the component parts. To make their negligence a cause of imminent danger, an independent cause must often intervene; the manufacturer of the finished product must also fail in *his* duty of inspection. It may be that in those circumstances the negligence of the earlier members of the series is too remote to constitute, as to the ultimate user, an actionable wrong (Beven on Negligence [3d ed.], 50, 51, 54; Wharton on Negligence [2d ed.], § 134; *Leeds* v. *N. Y. Tel. Co.*, 178 N. Y. 118; *Sweet* v. *Perkins*, 196 N. Y. 482; *Hayes* v. *Hyde Park*, 153 Mass. 514, 516). We leave that question open. We shall have to deal with it when it arises. The difficulty which it suggests is not present in this case."

While we are not dealing here with the negligence of the manufacturer of component parts, we are dealing with the negligence of a manufacturer taken together with the negligence of the purchaser in failing to inspect and discover.

In *Wanamaker* v. *Otis Elevator Co.* (228 N. Y. 192) the defendant had installed for the plaintiff a passenger elevator wrongfully designed, constructed and installed. Previous to the bringing of the *Wanamaker* action, an action had been brought by one Rumetsch, who was injured by the fall of the elevator. In the *Rumetsch* case (*Rumetsch* v. *Wanamaker, New York, Inc.*, 216 N. Y. 379) a recovery was had against Wanamaker upon the theory of negligence in failing to discover the defects by inspection. Rumetsch having recovered a verdict against Wanamaker, the action of *Wanamaker* v. *Otis Elevator Co.* was brought for reimbursement of the amount paid to Rumetsch as a result of the former action, and the court held that reimbursement could be had by Wanamaker notwithstanding Wanamaker's independent and subsequent fault. That case, therefore, establishes the proposition that a manufacturer's negligence in furnishing a defective, dangerous article is a proximate ~~~e~~~ of injury to a third person even though the buyer was also ~~~~gent~~~ in failing to discover the defect. (See, also, *Fulton County*

*Gas & Elec. Co.* v. *Hudson River Tel. Co.*, 200 N. Y. 287; *Koplan* v. *Boston Gas Light Co.*, 177 Mass. 15; *Burrows* v. *March Gas Co.*, L. R. 5 Ex. 67; Clerk & Lindsell's Law of Torts [6th ed.], 154, and English cases there cited.) The authorities are not in full accord. *Fowles* v. *Briggs* (116 Mich. 425); *Missouri, Kansas & Texas R. Co.* v. *Merrill* (65 Kan. 436) and *Carter* v. *Towne* (103 Mass. 507) are all cases the opinions in which seem to point to a different conclusion. The authorities in this State, however, warrant the conclusion that the principle of the *MacPherson Case* (*supra*) should be applied where the danger should reasonably have been foreseen.

Order affirmed, without costs, upon questions of law only, the court having examined all the facts and found no error therein. The alternative provisions of the order are stricken out. Settle order before HUBBS, J., on five days' notice.