ADELINE SMITH, Respondent, *v.* PEERLESS GLASS COMPANY, INC., et al., Appellants.

WILLIAM H. SMITH, Respondent, *v.* PEERLESS GLASS COMPANY, INC., et al., Appellants.

(Argued April 28, 1932; decided June 1, 1932.)

*Osmond K. Fraenkel* and *Arnold J. Brock* for Peerless Glass Company, appellant. The complaint should have been dismissed as to the defendant glass company because no negligence on its part was proved. (*Torgesen* v. *Schultz,* 102 N. Y. 156.) The complaint should have been dismissed because any negligence on the part of the glass company was too remote to create liability in favor of the plaintiff. (*MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382; *Gailbraith* v. *Illinois Steel Co.,* 143 Fed. Rep. 485; 201 U. S. 643; *Thomas* v. *Winchester,* 6 N. Y. 397; *Guinea* v. *Campbell,* 22 Quebec Super. Ct. 257; *O' Neill* v. *James,* 138 Mich. 567; *Wheeler* v. *Laurel,* 111 Miss. 442; *Stone* v. *Van Noy,* 153 Ky. 240; *Statler* v. *Ray Mfg. Co.,* 195 N. Y. 478; *Losee* v. *Clute,* 51 N. Y. 494; *P. G. Poultry Farm* v. *Newtown Mfg. Co.,* 248 N. Y. 293; *Ultramares Corp.* v. *Touche,* 255 N. Y. 170; *Comstock* v. *Wilson,* 257 N. Y. 231.)

*Frank H. Hiscock, Gerald Donovan* and *Joseph Henry Cohen* for Minck Bros. & Co., appellant. The undisputed evidence showed that the defendant bottling company, having no actual knowledge of the alleged defect in the bottle, made the reasonable customary tests of beverage bottlers to determine whether the filled bottle would stand up on the market. (*People* v. *Lichtman,* 173 N. Y. 63; *Glaser* v. *Seitz,* 35 Misc. Rep. 341; *Bruckel* v. *Milhau's Son,* 116 App. Div. 832; *O' Neill* v. *James,* 138 Mich. 567; *Simon* v. *Sun Ray Water Co.,* 162 N. Y. Supp. 968; *Guinea* v. *Campbell,* 22 Quebec Super. Ct. 257; *Wheeler* v. *Laurel Bottling Works,* 111 Miss. 442; *Stone* v. *Van Noy,* 153 Ky. 240; *Burnham* v. *Lincoln,* 225 Mass. 408; *Colyar* v. *Little Rock Bottling Works,* 114 Ark. 140; *Bates* v. *Batey & Co.,* L. R. [1913] 3 K. B. 351; *Favo* v. *Remington Arms Co.,* 67 App. Div. 414; 173 N. Y. 600; *Rosebrock* v. *General Electric Co.,* 236 N. Y. 227.) The plaintiff failed to prove that the alleged negligence was the proximate cause of her injuries. (*Searles* v. *Manhattan*

*Ry. Co.*, 101 N. Y. 661; *Ruback* v. *McCleary, Wallin & Crouse*, 220 N. Y. 188.)

*Alfred W. Meldon* and *Maurice Brandt* for respondent. The negligence of the defendants was not only established as a matter of fact, but the evidence compelled a finding of negligence upon the part of both. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Gallagher* v. *Crooks*, 132 N. Y. 338; *Harbor Co.* v. *R. R. Co.*, 76 Hun, 258; *Statler* v. *Ray Mfg. Co.*, 195 N. Y. 478; *Torgesen* v. *Schultz*, 192 N. Y. 156; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170; *Crist* v. *Art Metal Works*, 230 App. Div. 114; *Wanamaker* v. *Otis*, 228 N. Y. 192; *Rosebrock* v. *General Electric Co.*, 236 N. Y. 227; *Nolan* v. *Fach*, 178 App. Div. 115; *Willey* v. *Mynderse*, 165 App. Div. 620; *Bernstein* v. *Kritzer*, 253 N. Y. 410; *McAleenan* v. *Mass. Bonding & Ins. Co.*, 232 N. Y. 199.)

CROUCH, J. The plaintiffs in the actions are father and daughter. It will be convenient to discuss only the daughter's action. The plaintiff, a waitress or clerk at her father's wayside soda and cigar stand, lost the sight of one eye by the explosion of a soda water bottle. The bottle was made by the defendant Peerless Glass Co., Inc., and sold by it to the defendant Minck Bros. & Co., Inc. The latter filled it with soda water and put it on the market.

If the filled bottle may be regarded as an assembled product of which the bottle itself was a component part, the approach to the applicable rule of law may be made by way of *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382). By analogy, the bottler will be in the position of the defendant in that case and the maker of the bottle in that of the anonymous maker of the wheel. The liability of the bottler will then be ruled clearly enough by the law of that case and the evidence only need be considered. Not so, however, as to the maker of the bottle; for while the opinion perhaps foreshadowed his

liability, the point was left open. " We are not required at this time to say that it is legitimate to go back  *  *  * and hold the manufacturers of the component parts " (p. 390). The doubt seemed to hang on the problem of causation. Whatever was shadowy then in respect to the principles both of negligence and of causation has vanished in the light of subsequent decisions. (*Wanamaker* v. *Otis Elevator Co.*, 228 N. Y. 192; *Rosebrock* v. *General Electric Co.*, 236 N. Y. 227; *Sider* v. *General Electric Co.*, 203 App. Div. 443; affd., 238 N. Y. 64; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 181.)

There emerges, we think, a broad rule of liability applicable to the manufacturer of any chattel, whether it be a component part or an assembled entity. Stated with reference to the facts of this particular case, it is that if either defendant was negligent in circumstances pointing to an unreasonable risk of serious bodily injury to one in plaintiff's position, liability may follow though privity is lacking. (Cf. The American Law Institute, Restatement of the Law of Torts, §§ 265, 266.)

The case against the maker of the bottle is that on its surface were little ridges, known as striae, higher than the rest of the bottle. While the existence of striae does not always or necessarily weaken a bottle as against ordinary constant pressure, either internal or external, it is nevertheless regarded as a defect and as a dangerous point. It is principally so because such a bottle, subjected to contact with cold, undergoes an uneven contraction which starts a slight crack and thereupon blows out under the pressure of the charged water. That is what happened here, or at least the jury could so find. The result of such a blow-out may be and in the present case was serious. The maker knew the purpose for which the bottle was to be used, knew that bottles sometimes exploded and may readily be presumed to have known that when used for its intended purpose this bottle would be subjected to contact with cold and that it would, if

striated, be apt to explode. There was, therefore, a duty to use reasonable care. Reasonable care consists among other things in making such inspections and tests during the course of manufacture and after the article is completed as the manufacturer should recognize as reasonably necessary to secure the production of a safe article. Substantially the only test made was an examination by means of a polariscope of six bottles out of every batch of 2,880 for the sole purpose of checking the process of annealing. Defendant admits that no specific examination was made to detect striations. It says there was no practicable method. But the jury has found otherwise upon evidence that a customary test was by putting the bottles first in hot water and then in cold. Defendant was not called upon to subject each bottle to the infallible polariscopic examination. Under the evidence that seems to have been impracticable. It was bound, however, to use ordinary, customary methods to detect defects from which something more than trivial danger could be foreseen. This it failed to do. The contention that its negligence was too remote to create liability lacks support in the facts. Whether or not the bottle was old and had been in use must on conflicting evidence be deemed to have been decided against it by the jury.

The case against the bottler is otherwise under the evidence. It is not pressing analogy too far to regard the bottle, when filled, as a product made up of component parts. Its greater simplicity does not differentiate it in principle from the automobile in the *MacPherson* case. A defective bottle empty and a defective bottle filled with charged soda water are two distinct articles. This defendant, therefore, was under a duty to make such tests and inspections as one in its business should recognize as reasonably necessary to put out a safe article. That it bought its bottles from a reputable concern which presumably had made proper tests does not absolve it from its own duty of care any more than the probability of

intervening tests absolved the maker of the bottles. Those are merely evidential facts which enter into the standard of reasonable care. The evidence shows that the bottles were bought under a guaranty by the maker that they would withstand a pressure of ninety pounds to the square inch. When received, one or two bottles out of each gross were tested by being put under the guaranteed pressure. No bottle thus tested had ever broken. As filled and marketed the pressure was thirty-five pounds to the square inch. Plaintiff's expert witness testified that the actual process of filling and capping was about "the best test of whether they are going to stand on the conditions under which the bottle is used." It is possible, however, that he was there speaking of the effect of a constant pressure upon a defective bottle as distinguished from the effect upon it of contact with cold. It is clear that bottles did break in the process of filling and that defendant recognized such breakage as a danger to its workmen. Every bottle was washed in hot water at 130 degrees, thoroughly brushed.and immersed in cold water at city tap temperature. Those temperatures, however, did not reach the extremes of hot and cold involved in the hot water-cold water test referred to above. During the process of washing each bottle was examined under a strong light and defective bottles were thrown out. There was evidence on the part of defendant that the filling and capping process was a good and reliable test. There was no specific test or inspection aimed at the detection of striations as distinguished from other defects. But there is nothing to indicate that defendant knew anything about the idiosyncracies of striated glass. In any event, there is no evidence to show that any tests other than those above mentioned were customarily or ever used by bottlers. Plaintiff's expert witness was an expert on the subject of bottle making, not on the business of bottling. When he spoke of the hot water-cold water test as being customary in "the bottling trade" it is

clear from all the context that he was referring only to the bottle-making trade. There was no proof that this defendant was negligent.

The judgments against the defendant Peerless Glass Co., Inc., should be affirmed, with costs. The judgments of the Appellate Division and those of the Trial Term as to the defendant Minck Bros. & Co., Inc., should be reversed and a new trial granted, with costs to the appellant to abide the event. (See 259 N. Y. ᴸᴸᴸ.)

POUND, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.