**FREDERICKS**
v.
**AMERICAN EXPORT LINES,**
**Inc., et al.**

**S. J. FARRINGTON IRON**
**WORKS, Inc.**
v.
**JOHN W. McGRATH CORP.**

United States District Court
S. D. New York.
Dec. 15, 1953.

Sylvia Miller, New York City, by Chester A. Hahn, New York City, of counsel, for plaintiff.

Kearney, Lane & Mattison, Brooklyn, N. Y., by George P. Lane, Brooklyn, and Vincent Catoggio, New York City, for S. J. Farrington Iron Works, Inc.

Macklin, Speer, Hanan & McKernan, New York City, by Leo F. Hanan and Martin J. McHugh, New York City, for American Export Lines and John W. McGrath Corp.

EDELSTEIN, District Judge.

The plaintiff, in an action for personal injuries based on diversity jurisdiction, was awarded a jury verdict against the defendant S. J. Farrington Iron Works, Inc., and the defendant has moved for judgment n. o. v. or, in the alternative, for a new trial. Originally Farrington and the American Export Lines, Inc. were co-defendants, and Farrington had impleaded John W. McGrath Corporation as a third-party defendant. The plaintiff was a longshoreman in the employ of the third-party defendant McGrath, a stevedoring firm which was conducting operations on a pier occupied by the American Export Lines. The accident causing the injury was the collapse of a skid or platform on which the plaintiff was working. The skid was attached to the pier in such a manner as to provide an extension of the floor of the upper level of the pier, extending beyond the wall of the building, and attached to the building, in part, by means of skid irons which were component parts of the skid or platform. One of the skid irons, which had been fabricated by Farrington upon order from McGrath, broke. At the close of Farrington's case, motions for the dismissal of the complaint against American Export Lines and the third-party complaint against McGrath were granted and the case was submitted to the jury as

one between the plaintiff and the defendant Farrington.

■ The grounds for the judgment n. o. v. requiring discussion are three: (1) That the court took from the jury consideration of the question of proximate cause. This allegation of error is based upon the refusal by the court to submit to the jury the issue of the effect of any negligence by the third-party defendant. The case went to the jury on the theory that if the defendant was negligent as alleged, it would not be relieved of liability because the third-party defendant was also negligent in failing to inspect and discover defects. I am not persuaded that the case was thus erroneously submitted. Sider v. General Electric Co., 203 App.Div. 443, 197 N.Y. S. 98, affirmed 238 N.Y. 64, 143 N.E. 792; see also, Restatement of the Law of Torts, § 393; Prosser on Torts, § 83 at page 687. And of course, once the defendant's negligence was established and held not to be superseded by the negligence of any other party, reasonable men could not differ on the issue of whether the plaintiff's fall was a proximate result.

■ (2) That the doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, applies only to hidden or concealed dangers, and there was testimony by the plaintiff's metallurgical expert that an inspection by the third-party defendant employer might have revealed a defect in the skid iron, visible to the naked eye. But there was no evidence to indicate that the longshoreman using the skid could have observed a defect in the iron nor is it suggested that the longshoreman plaintiff had a duty to inspect the component parts of the skid for defects not obviously apparent. So far as he was concerned, the defect in the skid iron was hidden and concealed. Moreover, there is no analogy here to Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802, cited by the defendant. There the instrumentality involved was a farm machine which was patently hazardous for use in the manner in which it was intended to be used, a fact of which the user was put on notice at first glance. Here, the user was put on no such notice. The skid iron falls within that class of products which is dangerous only if not carefully made, and hence, within the MacPherson v. Buick doctrine, as extended in Smith v. Peerless Glass Co., 259 N.Y. 292, 181 N.E. 576, to apply to a manufacturer of component parts of a finished product.

■ (3) That there was no evidence of negligence because of uncontroverted proof that the skid iron was fabricated in accordance with specifications supplied by the third-party defendant. The defendant clings to the contention that if the iron it fabricated was a precise facsimile in physical appearance and measurement to the one supplied as a model, then it cannot be held liable for any negligence in fabrication. But it has been perfectly obvious almost from the beginning of the trial that the allegation of negligence made against Farrington was in the manner of fabrication, not in any deviation from the form, shape or measurements of the model. Though the model and its facsimile may look as alike as two peas in a pod, nevertheless, according to plaintiff's evidence, the technique of fabrication by the defendant was improper, with the effect of building into the iron a fatal weakness. A right angle bend in the iron was called for by the specifications and the model, and a right angle bend was made by defendant. But in achieving that angle, testified plaintiff's expert, the metal was bent around a radius less than the thickness of the metal being bent, if not, indeed, around a sharp edge. This technique was characterized as improper practice, with the effect of building a stress raiser into the metal, ultimately responsible for the break which occurred. The evidence on this issue of negligence was not only clearly sufficient to go to the jury, but was without substantial contradiction, in factual or theoretical aspect.

The basis for the motion for a new trial is the contention that the court improperly influenced the jury, interfering

with the return of a free and untrammeled verdict. The charge to the jury was completed at 12:42 p. m., after which they were taken to lunch. Upon return from lunch they commenced their deliberations, and at 2:45 p. m. the foreman sent a request to the court that a portion of the charge be re-read. After a lengthy conference with counsel, the court responded to the request at 3:45 p. m., when the jurors were returned to the courtroom. Apology for the delay was made to the jury, and the relevant portion of the charge was redelivered, with some attempt to simplify it. Even after this attempt at clarification, there was a desire expressed by the jury to ask further questions from the box, but the court instructed them to put their questions in writing. The jury retired again at 3:55 p. m., and at 5:40 p. m. reported that they were unable to reach an agreement. At that time the court urged them to further effort in the attempt to reach an agreement, and I do not understand that any objection is made to those remarks. At 5:48 p. m. the jury retired once more, and at 6:00 p. m. sent in a request for the Farrington exhibits, consisting of two sketches of skid irons and papers pertaining to purchase of the skid iron, including Farrington's invoices and McGrath's requisitions, which were sent into the jury room. At 6:15 p. m. the court, on its own motion, recalled the jury and recharged them in part. At 6:18 p. m. the jury again retired, and immediately thereafter, defendant moved for a mistrial, which was denied. At 7:10 p. m. the jury announced a verdict in favor of the plaintiff.

■ The manner of the oral presentation of the motion for a mistrial by counsel for the defendant left the unfortunate impression that the issue was a departure by the court from a proper standard of judicial conduct in recalling the jury sua sponte. But it now appears that the only impropriety alleged is in the nature of technically prejudicial error. There can be no doubt that the court may, in the proper exercise of its discretion, recall the jury and recharge them on its own motion. "It is a familiar practice to recall a jury, after they have been in deliberation for any length of time, for the purpose of ascertaining what difficulties they have in the consideration of the case, and of making proper efforts to assist them in the solution of those difficulties. It would be startling to have such action held to be error, and error sufficient to reverse a judgment." Allis v. United States, 155 U.S. 117, 123, 15 S.Ct. 36, 38, 39 L.Ed. 91. "There can be no question that the court may exercise a wide discretion in the matter of charging the jury, and may bring the jury in at any time and give them additional instructions whether requested or not." Charlton v. Kelly, 9 Cir., 156 F. 433, 438. See also, Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257, 262–263; Phillips v. New York Cent. & H. R. R. Co., 127 N.Y. 657, 27 N.E. 978; Cornish v. Graff, 36 Hun, N.Y., 160; 6 Carmody-Wait (Cyclopedia of New York Practice) § 21, pp. 632–33.

The action of the court in recalling the jury for a clarification of the charge was not taken hastily. It became apparent that the court's charge was the source of the jury's difficulty. The instructions were meticulously prepared with great attention to detail in an effort to cover accurately all the relevant law. The unfortunate result, in this case, was that the language was cumbersome and complex and not readily comprehensible by a jury. Immediately after the jury reported that they could not agree and were sent back for further effort, the court addressed itself to the task of simplifying and clarifying the crux of the charge. During this time the Farrington exhibits were sent for by the jury and delivered to them. Shortly thereafter the jury was recalled and given the supplementary instructions.

■ It is argued, first of all, that coercion was practiced on the jury by the court's "vocal intonation and hand

gestures" in delivering these instructions. Unquestionably there was vocal intonation, and very probably there were hand gestures; but I sincerely trust and believe that the impression conveyed to the jury was consistent with the impartial motivation of the court rather than with the defendant's suggestion to the contrary motivated by advocacy. Secondly, it is argued that the effect of this "conduct" was to convey to the jury the notion of the court's opinion of the testimony and evidence. To the best of its ability, the court attempted to avoid expressing any opinion upon the testimony and evidence, but that is a matter of choice, not of law, for it would be startling indeed to hear the contention that the judge may not express such an opinion in a United States District Court. Finally, it is argued that the court erred prejudicially in instructing the jury that they were to consider no issues not presented to them in the charge. I take it as axiomatic that the jury is to be guided by the court in the definition of the issues for their determination, and confess amazement at the suggestion that the court intimidated the jury by confining them to the issues formulated by the court. Defendant insists that the effect of such a procedure, coming so soon after the jury had requested defendant's exhibits, was to preclude the jury's consideration of those exhibits. What counsel is apparently contending is that these exhibits, which, if memory serves,[1] were admitted without objection, were competent to prove that the skid iron was fabricated according to specifications and that such proof constituted a complete defense to the action. The evidence was not received in acquiescence to such a legal theory. Moreover, in the rulings on defendant's requests to charge, that theory was held inapplicable to the case. Nevertheless, in his summation, counsel for defendant persisted in pressing it and he persists still, not merely on the ground that the issue was erroneously decided, on which ground he may prevail upon appeal, but on the ground that having so formulated the issue, the court impeded the conscientious deliberations of the jury by confining them to the issue as formulated. The argument is fantastic.

Defendant's motions will be denied.

---

1. There is no transcript of this portion of the testimony available.